[No. D013461. Fourth Dist., Div. One. Feb. 20, 1992.]

NANCY L. SWARTZENDRUBER, Plaintiff and Appellant, v. CITY OF SAN DIEGO et al., Defendants and Respondents.

897

COUNSEL

Shifflet, Walters, Kane & Konoske and Alan L. Geraci for Plaintiff and Appellant.

John W. Witt, City Attorney, Eugene P. Gordon and Carol S. Leimbach, Deputy City Attorneys, for Defendants and Respondents.

OPINION

**TODD, J.**—Nancy L. Swartzendruber appeals a judgment dismissing the lawsuit she filed against the City of San Diego (City) and certain individual police officials after she was fired from her civilian job in City's Police Department for refusing to wear a uniform as ordered. Swartzendruber contends the trial court erred in first sustaining a demurrer to certain causes of action and later granting summary judgment on the remaining causes of action.

FACTS

Swartzendruber was hired by City in November 1980 as a police department dispatcher. She received either satisfactory or highly satisfactory job

evaluations in this position through January 1984 when she was hired by Sergeant Stanley Elmore as a field representative in the licensing division of the police department. Swartzendruber's position as field representative involved enforcement of the City's alarm ordinance; she was required to perform field work and various clerical and administrative functions and provide testimony in administrative and court hearings. She received highly satisfactory evaluations for her job performance throughout the period she worked for Elmore.

In 1986, Swartzendruber and other field representatives in the licensing division sought a job reclassification. In July 1986, the position of field representative was reclassified to the position of code compliance officer, which resulted in a 15 percent salary increase for Swartzendruber and the others. Swartzendruber maintains that Elmore opposed the job reclassification, was upset and angry when it was approved and was heard to say he would make the code compliance officers wear uniforms. Swartzendruber also maintains Elmore ignored her concerns about the need for safety training for code compliance officers.

In early 1987, the police department conducted an inspection of the licensing division. One recommendation was that code compliance officers wear uniforms to better identify themselves to the public, create a more professional look and make it safer for them to perform their duties. The original recommendation called for khaki uniforms, but Swartzendruber and others complained such uniforms would too closely resemble uniforms worn by police officers and would pose a safety problem. Thereafter, it was decided the uniform color for the code compliance officers would be blue. On August 10, 1987, Swartzendruber and other code compliance officers received a memo informing them that starting September 1, 1987, they would be required to wear uniforms on the job. The uniform requirement affected only the women in the licensing division; neither Elmore nor two male detectives were required to wear uniforms.

Prior to the imposition of the uniform requirement, City provided the code compliance officers with an eight-hour training course that included a two-hour session on safety procedures. Swartzendruber did not consider this adequate safety training.

On September 1, 1987, Swartzendruber reported to work dressed in civilian clothing and was sent home. She was advised she could return to work if she wore the uniform. On September 16, 1987, Swartzendruber was given notice of the police department's proposal to terminate her. On November 13, 1987, Swartzendruber was terminated from her employment for insubordination—failure to obey a lawful order to report to duty in uniform.

Swartzendruber challenged her termination through internal department appeals procedures. The department upheld the termination. Swartzendruber appealed her termination to the City's Civil Service Commission (Commission).

Swartzendruber's position before the Commission was that her termination was unfair, arbitrary and discriminatory. She maintained (1) the uniform requirement was implemented in retaliation for securing the job reclassification, (2) the males in the licensing division (Elmore and two detectives) did not have to wear uniforms, (3) the department did not provide adequate safety instruction to compensate for the added potential hazards of wearing a uniform, and (4) the discipline of termination for one act of insubordination was excessive.

On April 20, 1988, the Commission upheld the termination, finding Swartzendruber's refusal to wear the uniform was a violation of a direct and lawful order, in violation of police department rules and regulations. The Commission also ordered Swartzendruber, if she applied, was to be reinstated on eligibility lists for which she is qualified. Swartzendruber did not file a petition for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.

On June 14, 1988, Swartzendruber filed a charge of sex discrimination and retaliation with the state Department of Fair Employment and Housing and the federal Equal Employment Opportunity Commission. Subsequently, she received right-to-sue letters from both agencies. In October 1988, she filed a written claim against the City.

According to Swartzendruber's deposition testimony, Elmore was always making comments to her about her weight and told her she was "going to look real good in those uniforms because of my big butt." She said such comments about her weight were the only sexually harassing remarks Elmore made to her, though he made other derogatory remarks about women, including comments about women's breasts. He also referred to the women on his staff as his harem. However, Swartzendruber said, except for the remarks about her weight, she considered Elmore's comments about women as jokes.

In April 1987, during the course of an investigation into a complaint of racial and sexual harassment against Elmore by a different code compliance officer, Swartzendruber told the police department's equal employment officer that she was never treated differently by Elmore because she was a woman. Swartzendruber also told the officer that Elmore joked about women being inferior, but she was never offended by any of his comments.

On May 4, 1989, Swartzendruber filed her lawsuit. Swartzendruber's first amended complaint states six causes of action: (1) breach of statutory duty; (2) intentional infliction of emotional distress; (3) fraud and deceit; (4) sex discrimination; (5) violation of title 42 United States Code sections 1983 and 1985; and (6) violation of public policy. The first amended complaint also states that a writ of mandamus challenging the Commission's decision upholding the termination would be futile since no abuse of discretion was involved in the Commission's decision.

On December 7, 1989, the trial court sustained City's demurrer to all causes of action except the fourth and fifth causes of action on the grounds Swartzendruber failed to pursue her remedies by not filing a petition for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. On October 11, 1990, the trial court granted City's motion for summary judgment on the grounds that Swartzendruber's claims for sex discrimination and violation of civil rights were barred by the doctrine of res judicata.

## DISCUSSION

### I

Swartzendruber contends the trial court erred in sustaining City's demurrer to her causes of action for intentional infliction of emotional distress and violation of public policy.[1] The contention is without merit.

According to Swartzendruber's first amended complaint, City, Elmore and others "engaged in an extreme and outrageous course of conduct that was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. In particular, Defendant ELMORE abused his authority and position by intentionally, maliciously and dishonestly creating a justification for terminating plaintiff in the following ways: . . . ."

According to Swartzendruber's first amended complaint, City violated public policy by firing her in retaliation for exercising her right to protest unsafe working conditions and rules.

█ It is well settled that a general demurrer admits the truth of all material factual allegations in the complaint. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Our review

---

[1]Swartzendruber, however, concedes the demurrer was properly sustained as to her causes of action for breach of statutory duty and fraud and deceit.

with respect to the demurrer therefore does not involve the plaintiff's ability to prove the allegations. (*Ibid.*)

■ Swartzendruber failed to have the decision of the commission judicially reviewed by bringing a petition for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5.[2] It is well established that mandamus proceedings are the proper avenue for contesting decisions regarding public employee discipline. ■ As our Supreme Court said in *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981]:

"Since the enactment of section 1094.5 of the Code of Civil Procedure, it is no longer open to question that in this state the writ of mandamus is appropriate 'for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer. . . .' "

Subsequently, in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], the Supreme Court held a mandamus proceeding is a prerequisite to a tort action. In *Westlake*, plaintiff's hospital privileges were revoked, and she exhausted all of her internal remedies. Then, without seeking judicial review by mandamus to compel reinstatement, she sued in tort for damages. The court held the failure to seek mandamus review was fatal to her tort action. The court analogized the situation to a malicious prosecution action, which cannot be maintained until the prior allegedly malicious proceeding has been terminated in favor of the plaintiff. The court also observed general policy reasons for the exhaustion rule, such as according proper respect to an association's quasi-judicial administrative decisions and simplifying court procedures by providing a uniform practice of judicial rather than jury review of quasi-judicial administrative decisions. (*Id.* at p. 484.)

In *Logan, supra,* 136 Cal.App.3d 116, a discharged governmental employee sued the district, alleging several causes of action, including breach

---

[2]Traditionally, courts have spoken of such failure in terms of failing to exhaust administrative remedies. (See *City of Fresno* v. *Superior Court* (1987) 188 Cal.App.3d 1484 [234 Cal.Rptr. 136]; *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116 [185 Cal.Rptr. 878].) Recently, some courts have objected to this terminology, pointing out since a proceeding under Code of Civil Procedure section 1094.5 is a *judicial* proceeding, it is not a failure to exhaust *administrative* remedies, but rather an issue of collateral estoppel. (See *Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235 [244 Cal.Rptr. 764]; *Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047 [275 Cal.Rptr. 594].) These courts speak of the failure of the plaintiff "to exhaust his *judicial* remedies." (*Knickerbocker, supra,* 199 Cal.App.3d at p. 240, original italics.)

of contract and intentional infliction of emotional distress. The court held that the plaintiff's damages causes of action "fail because he did not apply for a judicial review of the decision and findings of the administrative agency here involved pursuant to [Code of Civil Procedure] section 1094.5, which application amounts to a condition precedent to his filing a complaint for damages." (*Id.* at p. 124.) Similarly, in *City of Fresno, supra,* 188 Cal.App.3d 1484, a discharged city employee sued for damages without first challenging the personnel board's decision upholding the firing. The court held that since the plaintiff's action was premised upon an assertion that the board's decision was erroneous or unjustified, his action was premature until he had overturned that decision through the mandamus procedure. (*Id.* at pp. 1489-1490.)

■ The question here is whether Swartzendruber's causes of action for intentional infliction of emotional distress and violation of public policy were distinguishable from the Commission's ruling upholding the termination or were premised on the assertion that the Commission's ruling was erroneous.

■ California courts employ the "primary rights" theory to determine the scope of causes of action. (*Takahashi* v. *Board of Education* (1988) 202 Cal.App.3d 1464, 1474 [249 Cal.Rptr. 578].) Under this theory, there is only a single cause of action for the invasion of one primary right. In determining the primary right, "the significant factor is the harm suffered." (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 954 [160 Cal.Rptr. 141, 603 P.2d 58].)

■ As pled in Swartzendruber's first amended complaint, the causes of action for intentional infliction of emotional distress and violation of public policy were predicated on the impropriety of her termination. Both causes of action are based on her right to continued employment. Absent the termination, Swartzendruber did not suffer any harm. Her allegations of emotional distress caused by her termination do not represent a separate injury but rather would be a consequence of the termination. Consequential damages do not support a separate cause of action. To maintain a lawsuit for such damages, it was incumbent upon her to first seek judicial review of the Commission's ruling that the termination was proper. Having failed to seek such mandamus review, these causes of action are barred under *Westlake, supra,* 17 Cal.3d 465. The demurrer was properly sustained with respect to these causes of action.

Swartzendruber, however, argues it was not necessary for her to seek mandamus review before suing for damages by relying on *Knickerbocker, supra,* 199 Cal.App.3d 235. The reliance is misplaced.

In *Knickerbocker, supra,* 199 Cal.App.3d 235, a police lieutenant was discharged, and in the ensuing commission hearing, the commission found grounds for discipline but not for termination and ordered the plaintiff reinstated at the rank of sergeant with back pay. He did not seek a judicial review by administrative mandamus under Code of Civil Procedure section 1094.5, but instead brought a tort action for wrongful termination and intentional infliction of emotional distress. The trial court sustained a general demurrer to the entire complaint. The Court of Appeal reversed, holding the cause of action for emotional distress could be maintained if he could prove he suffered emotional distress from the improper firing as distinguished from that related to his proper demotion.

"Although the defendant city and its employees had grounds for demoting plaintiff, the Commission did not find they had grounds to fire him. Thus, to the extent that plaintiff can prove that he suffered emotional distress from the improper firing as distinguished from that related to his proper demotion, nothing in the prior adjudication prevents him from doing so." (*Knickerbocker, supra,* 199 Cal.App.3d at p. 245.)

Swartzendruber asserts that because the Commission ruled she could be reinstated on eligibility lists for further employment with the City, her case is analogous to *Knickerbocker.* We disagree. In *Knickerbocker,* the commission ruled the termination was improper and reinstated the plaintiff, albeit at a demoted rank. Here, the Commission upheld the termination. *Knickerbocker* is patently distinguishable.

As noted in footnote 2, *ante,* at page 903, in *Knickerbocker, supra,* 199 Cal.App.3d 235, the court rejected the terminology of failing to exhaust administrative remedies to describe a failure to seek administrative mandamus. Instead, the court said the plaintiff failed to exhaust his judicial remedies; this is actually an aspect of collateral estoppel or issue preclusion, which bars relitigating issues previously resolved in an administrative hearing by an agency acting in a judicial capacity. (*Id.* at p. 240-242.) The court held the plaintiff's causes of action involving issues litigated before the commission and decided adversely to him were barred because he never overturned the finding of the commission that the demotion was justified. "Exhaustion of judicial relief simply means that if he wishes to attack the administrative determination he must launch that assault in an administrative mandamus proceeding and not in a lawsuit for damages." (*Id.* at p. 244.) Similarly, here, Swartzendruber's causes of action for intentional infliction of emotional distress and violation of public policy, both of which as stated in the first amended complaint were predicated on the impropriety of the

termination, are barred because she never overturned the finding of the Commission that the termination was justified.[3]

Swartzendruber also unpersuasively argues she should be excused from seeking administrative mandamus because it would have been a futile exercise. As the court in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] observed in rejecting a futility argument presented to excuse disregard of the administrative remedy:

"The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide. . . . 'Appellant seeks further to excuse its failure, affirmatively to seek administrative relief, by contending that, even if it had attempted to do so, its request would have been denied; consequently, that its attempt would have been a futile gesture. We cannot assume that consequence. If, under such circumstances relief had been sought and denied, then there would have been basis for appeal. . . . It cannot be heard to complain in this court that there was danger of refusal when it made no effort to do so.' " (17 Cal.2d at p. 301, quoting *Red River Broadcasting Co.* v. *Federal Com. Commission.* (D.D.C. Cir. 1938) 98 F.2d 282 [69 App.D.C. 1].)

Also, in *Knickerbocker, supra,* 199 Cal.App.3d at page 244, the court implicitly rejected a similar argument, noting that the commission's unchallenged factual resolutions establish "a defense of justification for [plaintiff's causes of action] on the face of his complaint." (See also *Summers, supra,* 225 Cal.App.3d at p. 1064.)

In summary, on the basis that Swartzendruber did not seek administrative mandamus review of the Commission's ruling, the demurrer was properly sustained with respect to Swartzendruber's causes of action for intentional infliction of emotional distress and violation of public policy.[4]

---

[3]On appeal, Swartzendruber does not expressly state she should be granted leave to amend her complaint so she can allege that it was the conduct of City preceding her termination—and not the termination itself—that caused her distress. However, even if we were to infer such a request, we would not honor it, for Swartzendruber has not made an adequate showing that she could so amend her complaint. Consequently, we find no abuse of discretion by the trial court in sustaining the demurrer without leave to amend.

[4]In light of this conclusion, we find it unnecessary to address City's alternate argument that Swartzendruber's cause of action for violation of public duty was not properly pled under *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]. We also find no merit in Swartzendruber's argument that the demurrer to her cause of action for violation of public policy should be overruled on the basis of *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 88-91 [276 Cal.Rptr. 130, 801 P.2d 373], which held sex discrimination can support a *Foley*-type claim. Here, the pleading for this cause of action alleges City violated public

## II

Code of Civil Procedure section 437c, subdivision (c), provides in part:

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

██ While this summary procedure is " 'drastic' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]) . . . the purpose of a summary judgment 'is to expedite litigation by avoiding needless trials' (*Barry* v. *Rodgers* (1956) 141 Cal.App.2d 340, 342 [296 P.2d 898]. . .)." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976-977 [243 Cal.Rptr. 277].) The moving party has the burden to furnish supporting documents establishing the claims of the adverse party are entirely without merit on any legal theory. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The moving parties' affidavits must set forth facts entitling them to a judgment as a matter of law. (*Ibid.*)

Swartzendruber contends the trial court erred in granting summary judgment with respect to her two civil rights causes of action—sex discrimination and federal civil rights violations—on the basis of res judicata. In essence, this ruling was based on the notion that having failed to seek administrative mandamus, the ruling of the Commission became final and binding, and therefore Swartzendruber was estopped from relitigating it. This was similar to the grounds for sustaining the demurrer to four of the six causes of action as discussed in part I of this opinion, *ante.*[5]

In reviewing the summary judgment, we shall consider the remaining causes of action separately.

---

policy by firing her in retaliation for exercising her right to protest unsafe working conditions, not for sex discrimination.

[5]It is obvious in this regard the trial court that ruled on the demurrer reached a different conclusion than the trial court that ruled on the summary judgment motion with respect to the causes of action for sex discrimination and federal civil rights violations. This point, however, has limited significance. "It should go without saying that a ruling which erroneously overrules a demurrer is not binding on anyone. The objection may be raised again by the defendants, and the error may be corrected by the same or some different law and motion judge, by the trial judge, or by the appellate court. (*Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 877 [168 Cal.Rptr. 361].)" (*Summers, supra,* 225 Cal.App.3d at p. 1063, fn. omitted.)

## A.

With respect to the federal civil rights cause of action, we conclude the trial court was correct in granting summary judgment on the stated grounds of res judicata.

" 'Summary judgment is an appropriate remedy when the doctrine of res judicata in its subsidiary form of collateral estoppel refutes all triable issues of fact suggested by the pleadings.' [Citation.]" (*Gill* v. *Hughes* (1991) 227 Cal.App.3d 1299, 1304 [278 Cal.Rptr. 306].)

Unless writ review is sought, an administrative hearing adjudication binds the parties on the issues litigated. (*Knickerbocker, supra*, 199 Cal.App.3d at p. 243.) Here, Swartzendruber's failure to seek administrative mandamus pursuant to Code of Civil Procedure section 1094.5 rendered the Commission adjudication a final and binding one.

Again, we must examine the scope of the cause of action in question to determine if it encompasses the same primary right that was at stake in the Commission proceeding. In alleging her federal civil rights were violated (fifth cause of action), Swartzendruber alleged she was discharged in violation of her constitutional rights of due process and free speech by being terminated without cause, without giving her an opportunity to express legitimate concerns about safety, without providing meaningful safety training opportunities and without providing progressive discipline pursuant to City's own procedural manuals. Inasmuch as the primary right at stake was her right to continued employment and the harm suffered was loss of that employment, her fifth cause of action does not present a separate injury from that litigated before the Commission. Swartzendruber has merely restated her cause of action for wrongful termination in constitutional terms. "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) By invoking the Constitution and 42 United States Code sections 1983 and 1985, Swartzendruber has merely presented a new legal theory upon which she seeks recovery. (See *City of Los Angeles* v. *Superior Court* (1978) 85 Cal.App.3d 143, 155 [149 Cal.Rptr. 320] [federal civil rights action designed to vindicate same interests of plaintiffs in earlier conversion action barred]; and *Mattson* v. *City of Costa Mesa* (1980) 106 Cal.App.3d 441 [164 Cal.Rptr. 913] [primary right at stake in federal civil rights action same as in previous tort action].)

Swartzendruber, however, argues principles of res judicata and collateral estoppel cannot be applied to her civil rights causes of action since they were

not litigated before the Commission.[6] Our review of the Commission record shows that while her civil rights claims were not litigated at that proceeding, Swartzendruber could have raised these issues had she so desired in her testimony. Under Government Code sections 11505 and 11506, she had the right to interpose before the Commission any defense to the charge of insubordination, including defenses that City actions violated her civil rights. We find the observations of the Court of Appeal in *Takahashi* v. *Board of Education, supra,* 202 Cal.App.3d 1464, 1485, persuasive on this issue:

"There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated action that resulted from termination of her employment alleged to wrongful based on those same reasons. As the court pointed out in *Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465, 476: 'If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision . . . ; an individual should not be permitted to endlessly increase damages by foregoing available internal remedies.' "

Further, we note the highest court in the land has held the principles of res judicata and collateral estoppel apply to the federal civil rights statutes. In *University of Tennessee* v. *Elliott* (1986) 478 U.S. 788 [92 L.Ed.2d 635, 106 S.Ct. 3220], the United States Supreme Court stated that Congress in enacting the federal civil rights statute did not intend to create an exception to general rules of preclusion with respect to administrative adjudications. The high court in *Elliott* held that when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts in actions under the reconstruction civil rights statutes (42 U.S.C. § 1983 et seq.) must give the agency's factfinding the same preclusive effect it would be entitled to in the state courts. (478 U.S. at pp. 796-799 [92 L.Ed.2d at pp. 644-646].)

For these reasons, we conclude the trial court was correct in applying principles of res judicata to Swartzendruber's federal civil rights cause of action.

---

[6]Both at the trial level and here, the parties argue over whether the Commission refused to hear these issues. The record shows (1) the Commission refused to hear testimony of one of Swartzendruber's colleagues on the safety issue, (2) the Commission told Swartzendruber that in her testimony she could offer any reasons in mitigation, and (3) Swartzendruber did not raise the sex discrimination and federal civil rights violations issues before the Commission.

## B.

■ With respect to Swartzendruber's fourth cause of action for sex discrimination, we view it differently in part because the pleading encompasses conduct that arguably occurred before and was not necessarily part of the termination.

We also note that the United States Supreme Court in *Elliott, supra,* 478 U.S. 788, reached a different conclusion regarding discrimination claims than it did regarding claims under the federal civil rights statutes. In *Elliott,* the high court held that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on title VII claims. (*Id.* at pp. 795-796 [92 L.Ed.2d at p. 644].) (Cf. *Astoria Federal Sav. and Loan Ass'n* v. *Solimino* (1991) 501 U.S. __ [115 L.Ed.2d 96, 111 S.Ct. 2166] [unreviewed state findings do not preclude federal age-discrimination proceeding].)

Along similar lines, we observe that with respect to Swartzendruber's cause of action for sex discrimination—unlike her other causes of action— there was an alternate administrative avenue to the City's internal review proceedings and an appeal to the Commission. Swartzendruber chose to administratively pursue her sex discrimination claim by filing complaints with the federal Equal Employment Opportunity Commission and the state Department of Fair Housing and Employment[7] and obtained right-to-sue letters from both of the agencies.

Since Swartzendruber complied with FEHA administrative process, she fulfilled the prerequisite for bringing a civil suit on a statutory cause of

[7]The California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) establishes that freedom from job discrimination on specified grounds is a civil right (Gov. Code, § 12921) and declares such discrimination is against public policy (Gov. Code, § 12920) and an unlawful employment practice (Gov. Code, § 12940). The FEHA also creates the Department of Fair Employment and Housing (Gov. Code, § 12901), whose function is to investigate, conciliate and seek redress of claimed discrimination (Gov. Code, § 12930), and the Fair Employment and Housing Commission, which performs adjudicatory and rulemaking functions (Gov. Code, § 12935; see also Gov. Code, § 12903). Under the FEHA, an aggrieved person may file a complaint with the department (Gov. Code, § 12960), which must promptly investigate (Gov. Code, § 12963). If the department deems a claim valid it seeks to resolve the matter—in confidence—by conference, conciliation and persuasion. (Gov. Code, § 12963.7.) If that fails or seems inappropriate, the department may issue an accusation to be heard by the Commission. (Gov. Code, §§ 12965, subd. (a), 12969.) If an accusation is not issued within 150 days after the filing of the complaint or if the department earlier determines not to prosecute the case and the matter is not otherwise resolved, the department must give the complainant a "right to sue" letter. The complainant may then bring a civil suit in superior court. (Gov. Code, § 12965, subd. (b); see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213-214 [185 Cal.Rptr. 270, 649 P.2d 912].)

action. (*Rojo* v. *Kliger, supra,* 52 Cal.3d at p. 83.)[8] As far as a statutory claim of sex discrimination, she was not required to also pursue other administrative remedies.[9] Thus, given the statutory background of title VII, as well as the FEHA, we conclude it is inappropriate in this case to impose a rule of preclusion to Swartzendruber's sex discrimination cause of action. (Cf. *Oquendo* v. *California Institution for Women* (1989) 212 Cal.App.3d 520, 523 [260 Cal.Rptr. 688].)

Accordingly, we reverse the summary judgment as to Swartzendruber's fourth cause of action for sex discrimination. In light of (1) the motion below, which was a motion for summary judgment and/or summary adjudication of issues, (2) the fact the trial court did not consider any other ground besides res judicata in deciding the motion and (3) recent changes to Code of Civil Procedure section 437c,[10] we defer any further analysis of summary judgment as to this cause of action.[11]

---

[8]In *Rojo, supra,* 52 Cal.3d 65, our Supreme Court held that failure to exhaust administrative remedies under FEHA does not bar a sex discrimination lawsuit for nonstatutory causes of action. (*Id.* at p. 88.) Obviously, the facts as well as the issue decided in *Rojo* are distinguishable from this case. However, the holding in *Rojo,* coupled with language used throughout the opinion, leads us to conclude that recourse to the FEHA administrative procedures eliminates the need to pursue administrative mandamus pursuant to Code of Civil Procedure section 1094.5. The court in *Rojo* observed that FEHA does not override other state laws, including claims under the common law, relating to employment discrimination. "[I]ts purpose was not to narrow, but to expand the rights and remedies available to victims of discrimination." (52 Cal.3d at p. 82.) The *Rojo* court also noted: " 'The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination . . . .' " (52 Cal.3d at pp. 74-75, quoting *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 431 [217 Cal.Rptr. 16, 703 P.2d 354].)

[9]We note that under *Takahashi* v. *Board of Education, supra,* 202 Cal.App.3d 1464, had Swartzendruber filed a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5 and suffered an adverse ruling, that ruling would have barred her FEHA lawsuit.

[10]The relevant change is the rewriting of subdivision (f) of Code of Civil Procedure section 437c, which became effective January 1, 1991. (Stats. 1990, ch. 1561, § 2.) The new version of Code of Civil Procedure 437c, subdivision (f), no longer provides for summary adjudication of issues, but allows for summary adjudication of causes of action. The statement of legislative intent regarding this amendment says: "It is . . . the intent of this legislation to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or a defense." (Stats. 1990, ch. 1561, § 1.)

[11]After oral argument, we asked the parties to submit additional briefing, pursuant to Government Code section 68081, on (1) our power to uphold the trial court's granting of summary judgment on grounds other than those upon which the trial court based its decision and (2) whether there were alternative grounds to uphold the trial court's ruling on the sex discrimination cause of action. However, after due consideration of the arguments presented, as well as the record below, we decline to further rule on the matter. This should not be construed as expressing an opinion on the retroactivity of Code of Civil Procedure section 437c to a case such as this, where the trial court's order was filed prior to the effective date

## DISPOSITION

The judgment is reversed with respect to Swartzendruber's fourth cause of action (sex discrimination). In all other respects, the judgment is affirmed.

Each party to bear its own costs.

Kremer, P. J., and Wiener, J., concurred.

---

of the new statute. Rather, we are saying under the particular circumstances of this case, we deem our action appropriate. Among those circumstances are: (1) The parties did not fully litigate—and the trial court did not consider—whether there was a triable issue of material fact and the moving party is entitled to judgment as a matter of law on the sex discrimination cause of action; and (2) the sex discrimination cause of action as pled in Swartzendruber's first amended complaint encompasses a number of theories. Because of this second factor, a de novo review of City's motion with respect to the sex discrimination cause of action could result in what is in effect an adjudication of issues, a practice that is no longer allowed under Code of Civil Procedure section 437c, subdivision (f). By the same token, nothing in the new version of Code of Civil Procedure, section 437c would preclude us from affirming the summary judgment on the federal civil rights cause of action.