[No. F055385. Fifth Dist. Dec. 9, 2009.]

CYNTHIA FRANCENE GEORGE, Plaintiff and Respondent, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified
for publication with the exception of part III.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Vincent J. Scally, Jr., and Noreen P. Skelly, Deputy Attorneys General, for Defendant and Appellant.

Herron & Herron, Joseph Clapp and J. Wynne Herron for Plaintiff and Respondent.

## OPINION

**WISEMAN, Acting P. J.**—The California Unemployment Insurance Appeals Board (Agency) appeals from a judgment entered against it after a jury found that it had unlawfully retaliated against its employee, Cynthia Francene George. The Agency suspended George, who was employed as an administrative law judge, on three occasions subsequent to her filing a charge with the Department of Fair Employment and Housing alleging that travel assignments were made discriminatorily in the Fresno office.

We hold that the doctrine of res judicata does not preclude a state employee from pursuing both internal administrative civil service remedies and those available under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). The doctrine of collateral estoppel may act to preclude a retaliation claim if issues decided in the administrative action eliminate a necessary element of the employee's case. In this case, however, the administrative agency's findings do not eliminate a necessary element of George's retaliation action. We also conclude there was sufficient evidence to support the jury's verdict. The judgment is affirmed.

In the unpublished portion of this opinion, we also reject on procedural grounds the Agency's challenge to the economic damages awarded by the jury.

## *PROCEDURAL AND FACTUAL SUMMARIES*

Appellant, Cynthia Francene George, was employed by the Agency in Fresno as an administrative law judge (ALJ). ALJ's assigned to the Agency's Fresno office are required to travel to outlying areas throughout the San Joaquin Valley to conduct hearings in unemployment insurance appeals. At some point, George began to think that travel assignments were not being equally distributed amongst the ALJ's. She began looking into the method used to make assignments. The calendaring supervisor told George that two male ALJ's were given preference in travel assignments.

George did a statistical analysis of which ALJ's were given what assignments. Although her numbers did not show a clear gender bias, they did indicate that travel was not evenly distributed among the ALJ's. George prepared a memo documenting her research, which she distributed to her colleagues. She discussed her concerns with then presiding ALJ Ross and told him that she believed male ALJ's were receiving preferences in travel assignments, although she did not use the word "discrimination."

George also discussed her concerns with her coworkers, including ALJ Betsy Temple. Temple told George she was concerned that if George pursued her complaints, it would lead to the head office in Sacramento interfering with how travel was assigned in Fresno. Temple believed the Fresno office was unique and that the best way to handle travel there was to be flexible so that individual employee needs and preferences could be accommodated. For example, George did not like to drive in the fog and therefore she was not asked to conduct hearings in Mendota during the winter. Temple told George that she would be "sorry" if she pursued her complaint.

Meetings with the ALJ's were scheduled to discuss George's concerns. George, after listening to the preferences expressed by the other ALJ's and the individual accommodations that had been made, concluded that the individual preferences given the male ALJ's had created an unfair system of travel assignments.

On November 6, 2001, George filed a complaint with the Department of Fair Employment and Housing (DFEH), alleging that she had been subjected to "differential treatment, [and] assigned less favorable overnight travel" in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (h)). According to George, within a month of when she filed her charge, the Agency modified the travel assignment procedure to a standardized rotation, eliminating her concerns of gender bias. The Agency also eliminated all the accommodations previously made for individual ALJ preferences.

In March 2002, Temple was promoted to presiding ALJ. George testified that her relationship with Temple was different from the one she had with the prior presiding ALJ. Temple did not discuss things with George, but only communicated by e-mail.

On July 24, 2002, George was late for work because she had a medical issue on her way to work. Later that day, Temple gave George a formal written disciplinary warning for being late. As the result of a number of other alleged incidents of misconduct, in October 2002, Temple suspended George for a two-week period without pay (first suspension, SPB case No. 02-4017). In February 2003, George was again suspended by Temple for three weeks without pay for a number of separate allegations of misconduct (second suspension, SPB case No. 03-1058). George appealed both these suspensions to the State Personnel Board (Board), alleging that the discipline was inappropriate and unwarranted. Although the actual appeal is not in the record, all parties agree George challenged the suspensions by arguing that either the alleged acts of misconduct did not occur or that they did not warrant discipline. She did not argue that the discipline was retaliatory.

On March 9, 2004, after a full evidentiary hearing, the Board found that the first suspension was not supported, but concluded the second suspension was just and proper. The allegations of the first suspension were (1) that George had failed to inform Temple in a timely manner that George was scheduled for jury duty; (2) that, although George was required to report to jury duty only one day out of five, she did not advise anyone in the Fresno office that she was available for work the other days; (3) that she falsified her time report claiming that she had worked after being dismissed from jury

duty; and (4) that George was late for hearings on July 24 and October 2, 2002. The Board concluded there was no evidence that George was late on October 2, or that she was asked why she was late on July 24, or that her failure to provide an explanation was cause for discipline. The Board also decided that George had not falsified her time report. The Board found that, although George "could have taken more initiative in keeping her office informed of her whereabouts during her week of scheduled jury service, her failure to do so does not warrant formal discipline . . . ." As a result, George's first suspension was revoked and all benefits and pay were restored.

The second suspension was based on allegations (1) that George refused without justification to conduct an assigned hearing on December 23, 2002; (2) that George became angry and abusive to the office receptionist because of a delay in getting a phone message; (3) that George disobeyed an order from Temple not to talk about business-related issues with the staff directly; and (4) that George loudly and openly mocked Temple's directive in front of office staff. The Board found that George had harassed the clerical staff, improperly refused to handle the December 23 hearing, and had acted inappropriately when she loudly mocked and disobeyed Temple's directive. The second suspension was reduced from three weeks to two weeks, with corresponding pay and benefit adjustments. George challenged the Board's decision in superior court. Her petition for writ of mandate was denied.

After her second suspension, George filed a second charge with DFEH, claiming that she was being retaliated against by the Agency for objecting to the travel scheduling. She believed her two previous suspensions were motivated by retaliatory animus. Due to the atmosphere in the office and her dealings with Temple, George also felt that she soon would be facing a third suspension or worse.

In August 2003, George was suspended a third time for two weeks for (1) being inexcusably absent from work on May 14, 2003; (2) for failing to begin a hearing on time on July 9, 2003; and (3) for failing to respond timely to an e-mail from Temple asking why the hearing began late (third suspension, SPB case No. 03-2494). On June 8, 2004, the Board upheld the third suspension, sustaining one of the three allegations of misconduct, but reducing it to a one-week suspension. The Board found that, in refusing to come to work on May 14, George "placed her personal feelings and suspicions over her judicial duties," which constituted inexcusable neglect of her job responsibilities. The Board found that the other two allegations did not result in insubordination or inexcusable neglect of her duties. George did not seek judicial review of the June 8, 2004, decision and does not dispute its finality.

On July 15, 2005, after exhausting FEHA administrative remedies, George filed a civil action, alleging that the three suspensions were intended to retaliate against George for filing the DFEH charge in 2001. George sought lost wages, recovery of the $17,000 paid in attorney fees to defend the third suspension, and emotional distress damages.

The Agency twice moved for summary judgment on a number of grounds, including that the action was barred by the doctrine of res judicata and/or the doctrine of collateral estoppel because the propriety of the suspension had already been litigated before the Board. The trial court denied both requests for summary judgment, concluding that the issues in the civil action and those litigated before the Board were different.

The matter went to jury trial. The jury found that George had engaged in protected activity, had suffered an adverse employment action, and that her complaints of gender discrimination were a motivating reason for the decisions to discipline her. The jury awarded $25,000 in economic damages ($8,000 in lost wages and $17,000 in attorney fees incurred to defend against the third suspension) and $75,000 in noneconomic damages. In addition, the trial court awarded $391,755 in attorney fees and costs.

## DISCUSSION

I. *Order denying summary judgment*

The doctrine of res judicata precludes a second suit between the same parties on the same cause of action. (*People v. Barragan* (2004) 32 Cal.4th 236, 253 [9 Cal.Rptr.3d 76, 83 P.3d 480].) All claims based on the same cause of action must be decided in a single suit. If not, the first action bars relitigation of a second. Consequently, a plaintiff may not split a single cause of action or relitigate the same cause of action on a different legal theory or seek different relief. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 [123 Cal.Rptr.2d 432, 51 P.3d 297].)

The Agency contends its motion for summary judgment, on the ground that George's retaliatory claim was barred by the doctrine of res judicata, should have been granted. According to the Agency, George's administrative appeals and her retaliation claim are based on the same claim—the impropriety of the discipline imposed—and that this claim was resolved against her before the Board. The Agency also argues that George was required to raise the retaliation issue when she challenged the suspension before the Board, and her failure to do so bars her FEHA claim. George counters that the claims submitted to the Board are not the same as her retaliation claim under FEHA,

and that the remedies available under FEHA are not the same as those available under the state civil service system. Therefore, George contends that the doctrine of res judicata does not bar her FEHA claim because the primary right involved is different. (See *Swartzendruber v. City of San Diego* (1992) 3 Cal.App.4th 896, 904 [5 Cal.Rptr.2d 64] [scope of cause of action determined by primary-rights theory], disapproved on other grounds in *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 72 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

A motion for summary judgment raises only questions of law. Consequently, on review, we must conduct an independent review of the legal questions raised. (*Varni Bros. Corp. v. Wine World, Inc.* (1995) 35 Cal.App.4th 880, 886–887 [41 Cal.Rptr.2d 740].)

■ George is a civil service employee. Disciplinary actions taken against her by the Agency are reviewable by the Board, which has a duty to enforce the civil service statutes and to review disciplinary actions. (Cal. Const., art. VII, § 2, subd. (a); see also *State Personnel Bd. v. Department of Personnel Admin.* (2005) 37 Cal.4th 512, 521 [36 Cal.Rptr.3d 142, 123 P.3d 169].) The Board also has jurisdiction to address discrimination claims made by state employees in the context of challenging discipline or termination. (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 429 [217 Cal.Rptr. 16, 703 P.2d 354].) It is undisputed that George did not raise the FEHA statutory claim in the Board proceedings.

■ Despite the Agency's contention that the civil service proceeding and the FEHA action seek to redress the same primary right, both challenging the impropriety of suspensions, case law recognizes two distinct rights or interests at stake when a civil service employee challenges discipline or termination on discriminatory or retaliatory grounds. The primary right protected by the state civil service system is the right to continued employment, while the primary right protected by FEHA is the right to be free from invidious discrimination and from retaliation for opposing discrimination. We have held that "state employees may pursue their claims of employment discrimination with either the Board or the DFEH or both." (*Ruiz v. Department of Corrections* (2000) 77 Cal.App.4th 891, 900 [92 Cal.Rptr.2d 139].) This is because FEHA "clearly manifests an intent to include both public and private employers within its scope." (*State Personnel Bd. v. Fair Employment & Housing Com., supra,* 39 Cal.3d at p. 429; see also *Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 728 [17 Cal.Rptr.3d 374] [public employee not required to exhaust internal remedy before pursuing FEHA claim].) The Board's responsibilities are directed at ensuring that state employment is based on merit while FEHA was enacted to eliminate discrimination and to vindicate civil rights. (*Ruiz v. Department of*

*Corrections, supra,* 77 Cal.App.4th at p. 900.) These are distinctly different rights with different harms even though there may be overlap in the two statutory schemes. (See also *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954 [160 Cal.Rptr. 141, 603 P.2d 58] [harm to emotional tranquility is different from right to be free of invidious discrimination].) For this reason, there is no requirement that a state employee raise the FEHA issue during the administrative review process, and the doctrine of res judicata does not act as a complete bar to a FEHA action when an employee seeks review through an alternative administrative remedy available as a consequence of the employee's civil servant status. (See *Johnson v. City of Loma Linda, supra,* 24 Cal.4th at p. 73.)

The case cited by the Agency in support of its position, *Swartzendruber v. City of San Diego, supra,* 3 Cal.App.4th 896, does involve a situation where a civil servant was terminated and then pursued both civil service administrative review and a FEHA claim, but is not on point. To the contrary, the issue raised by the Agency here, whether res judicata bars a FEHA claim, was decided against the agency in *Swartzendruber.* The quote from *Swartzendruber* relied upon by the Agency is extracted from the court's discussion of whether a civil servant could challenge her termination in the civil service system and then avoid being bound by the ruling by failing to seek judicial review of the adverse determination. The analysis involves a discussion of the exhaustion-of-administrative-remedies doctrine. The court concluded that, unless a party to a quasi-judicial administrative agency proceeding challenges the adverse findings by means of a mandate action in superior court, those findings are binding in later civil actions. The two causes of action involved were intentional infliction of emotional distress and termination in violation of public policy. The issue was whether the administrative determinations were final and binding on these claims—not whether a FEHA claim was barred as a result of the administrative determinations.

In a separate part of the opinion, *Swartzendruber v. City of San Diego* held that the exhaustion-of-administrative-remedies doctrine did *not* apply to a FEHA claim because separate rights were involved. It concluded that, since the employee had complied with the FEHA administrative process, she had fulfilled the prerequisite for bringing a civil suit on her statutory cause of action, and it would be "inappropriate in this case to impose a rule of preclusion to Swartzendruber's sex discrimination cause of action." (*Swartzendruber v. City of San Diego, supra,* 3 Cal.App.4th at p. 911.) This holding was later disapproved in *Johnson v. City of Loma Linda, supra,* 24 Cal.4th at page 72. *Johnson* held that issue preclusion does apply in FEHA actions where there has been a prior determination of issues in an administrative proceeding. It did not, however, hold that res judicata applied to bar a subsequent FEHA action. "[T]he scope of the cause of action in a prior

proceeding [res judicata] has no bearing on whether a party should be allowed to relitigate an issue." (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 486 [111 Cal.Rptr.2d 870].)

The Agency's position also is not supported by our opinion in *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464 [249 Cal.Rptr. 578], which was cited as general authority for the doctrine of res judicata in the Agency's briefing. *Takahashi* is factually distinguishable from this case. The employee in *Takahashi*, a teacher, was discharged by her employer for a number of reasons. The discharge was challenged administratively and the employee lost. The employee then filed a number of related actions in both state and federal courts challenging her discharge and raising a number of different common law and civil rights claims. The federal action included an allegation that the employee had been terminated on account of her sex and ethnic origin. In these earlier cases, the courts consistently concluded that the employee's discharge was for good cause.

The employee then filed an action under FEHA claiming her discharge was discriminatory. As we observed in *Takahashi v. Board of Education*, "plaintiff is mistaken in believing that it is the administrative proceeding that serves as the [res judicata] in this case. The first action (in the superior court) is the state court proceeding upon which the trial court based its finding of res judicata as to the consolidated actions. As discussed, that first action was brought by plaintiff in December 1980. The trial court independently re-viewed the record of the administrative hearing, held a hearing at which plaintiff had the opportunity to present any argument to the court, and determined independently that cause existed to dismiss plaintiff on the basis of incompetency. That judgment has long since become final." (*Takahashi, supra,* 202 Cal.App.3d at p. 1474.) We concluded the plaintiff could not "prevail against defendants on the basis that their conduct toward her that caused her termination was wrongful in the face of a final state court determination in the first action that the district had the right to terminate her for incompetency." (*Id.* at p. 1482.) To the contrary, in this case, there was no finding that the Agency's actions as a whole were justified by George's behavior. Further, there was no finding to preclude the conclusion that the imposition of the three relatively minor disciplinary actions was the result of a retaliatory motive.

Second, whether the resolution of an issue in one proceeding bars a subsequent action on a related claim depends on whether the prior determination resolves the claim itself or a key issue in the current claim. In *Takahashi v. Board of Education*, the prior actions resolved the key issue in the FEHA claim—whether the discharge was for good cause. This is not the case here.

The findings of the administrative tribunal certainly are binding on George, but under the unique circumstances of this case, they do not act to bar her FEHA claim. Our more recent opinion in *Ruiz v. Department of Corrections, supra*, 77 Cal.App.4th 891, sheds more light on the relevant legal principles than does *Takahashi*, which was required to wrestle with convoluted procedural facts not present here.

■ We now must determine whether the doctrine of collateral estoppel, as distinct from res judicata, acts to preclude George from recovering on her FEHA claim. The doctrine of collateral estoppel bars the party to a prior action from relitigating *any* issues finally decided against him or her in the earlier action. (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522]; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223]; *Rohrbasser v. Lederer* (1986) 179 Cal.App.3d 290, 296–297 [224 Cal.Rptr. 791].) " 'Summary judgment is an appropriate remedy when the doctrine of res judicata in its subsidiary form of collateral estoppel refutes all triable issues of fact suggested by the pleadings.' [Citation.]" (*Gill v. Hughes* (1991) 227 Cal.App.3d 1299, 1304 [278 Cal.Rptr. 306].) When the issue previously decided is a required element of the FEHA cause of action, the prior adjudication may have a preclusive effect on the claim, even if the entire claim is not barred, resulting in a dismissal of the FEHA action. (*Castillo v. City of Los Angeles, supra*, 92 Cal.App.4th at pp. 486–487.)

*Castillo v. City of Los Angeles* is illustrative. The employee in *Castillo* worked for the City of Los Angeles. He was dismissed because, according to the city, he was repeatedly absent and tardy without authorization. The employee challenged his dismissal through the civil service internal administrative review process, which included an evidentiary hearing before the Los Angeles County Civil Service Commission (commission).[1] The commission found that the reasons given for discharge were established by the evidence and sustained the dismissal. The employee sought relief through a petition for writ of mandamus, which was denied on the merits. The employee then filed a claim with DFEH alleging that the dismissal was discriminatorily motivated. The employee had not attributed the discharge to discrimination prior to filing the DFEH claim, but (like George in her civil service review) argued that his supervisor treated him differently than other employees. The trial

---

[1] As in this case, the employee in *Castillo* did not raise the discrimination claim in the civil service proceeding. The court did not decide the issue directly, but said, "Even if we permitted Castillo, as he argues we should, to 'split his causes of action' between administrative and judicial avenues, we would still affirm. Regardless of the forum, Castillo must still establish the elements of his causes of action. If City can show that any element cannot be established, as is the case with the element of wrongfulness of discharge, it is entitled to summary judgment." (*Castillo v. City of Los Angeles, supra*, 92 Cal.App.4th at p. 486.)

court granted the city's motion for summary judgment, concluding that the commission's administrative finding that the discharge was appropriate was binding on the discrimination claim. The appellate court affirmed, reasoning that the administrative forum resolved the issue of whether the employer's stated reason for discharge was pretextual against the employee and this precluded the employee from being successful. (*Castillo v. City of Los Angeles, supra*, 92 Cal.App.4th at p. 483.) Since the employee in *Castillo* could not prove wrongfulness of discharge, an element of a FEHA claim of discrimination, the employer was entitled to judgment as a matter of law. (*Castillo, supra*, at pp. 486–487.) The administrative findings eliminated any question regarding the wrongfulness of the discharge because they concluded the reasons given for the discharge were legitimate. (*Ibid.*; see also *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410] [decision of quasi-judicial tribunal that employer acted correctly has effect of establishing propriety of employer's action in subsequent legal action]; *Williams v. Housing Authority of Los Angeles, supra*, 121 Cal.App.4th at pp. 725–726 [adverse ruling in administrative forum will have detrimental effect on public employee's right to proceed with FEHA claim]; *Johnson v. City of Loma Linda, supra*, 24 Cal.4th at p. 72 [when public employee pursues administrative civil service remedies and receives adverse ruling not set aside through judicial review procedures, adverse finding is binding on discrimination claims under FEHA].) By pursuing the civil service review process to its finality, the employee lost her FEHA claim—not because she chose to pursue both remedies, but because the resolution of her claim in one forum resolved a necessary element of her claim in another forum.

Several courts have recognized the risks of pursuing both an internal administrative remedy and a FEHA civil action given the possible application of collateral estoppel in the FEHA action to knock out a key element before trial. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1086 [67 Cal.Rptr.3d 832]; *Castillo v. City of Los Angeles, supra*, 92 Cal.App.4th at pp. 479–480; *Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135, 1143–1144 [20 Cal.Rptr.3d 598] [if state employee chooses to pursue both remedies, there is risk that FEHA claim may no longer be viable].) We now consider whether the Board's findings in this case preclude George's FEHA claim.

The Board's decisions established that some of the reasons given for the suspensions were legitimate—it upheld two of the suspensions. While these findings are binding on George in her FEHA action under the doctrine of collateral estoppel, we do not believe the findings preclude the *entire* retaliation cause of action. George is not simply challenging an adverse

action on the ground that it was discriminatory. Instead, she has alleged that the Agency accumulated a number of minor incidents and used them collectively to support the suspensions with retaliatory animus. George alleges that, after Temple became the presiding ALJ, George was "subjected to a continuing series of adverse employment actions, disciplinary actions and differential treatment in her employment," including hostile verbal and nonverbal communications by Temple, a failure to protect against retaliatory treatment from coworkers, the written warning on July 24, 2002, and the three suspensions.

The Board's findings do not resolve these issues in favor of the Agency so as to completely defeat the retaliation cause of action. The question was well framed by the trial court in its order denying the second request for summary judgment: "Though the findings that [George] had in fact committed some conduct that justified some suspension cannot now be challenged in this action, the question is whether those findings are sufficiently inconsistent with the elements [George] must establish in order to prevail on her claim of unlawful retaliation . . . ." For example, the Board revoked the first suspension in its entirety, finding that it was without justification. The Board reduced the second and third suspensions, not only because the first suspension was revoked, but because a number of the allegations supporting the second and third suspensions were found to be *without substance* and, for these reasons, the time imposed was excessive. This leaves the question whether George was treated more harshly than other employees because she had challenged the ALJ travel policy as being discriminatory. Given the relatively minor incidents used as justification for discipline and the deteriorating relationship between George and Temple, a finding that some of the collected incidents were sufficient under the civil service rules to sustain a lesser discipline than imposed is not the equivalent of a finding that the discipline imposed was just, proper, and nonretaliatory.

We are not suggesting that the Board's findings are irrelevant to the FEHA action—they are relevant. The jury heard that the Board found some of the alleged incidents of misconduct justified discipline, and the Board's detailed analysis of each allegation of misconduct was before the jury. Consequently, George was bound by the Board's findings that she engaged in misconduct. The Agency, however, was equally bound by the Board's determination that the first suspension was not justified and that much of the justification given to support the second and third suspensions was unfounded.

 In summary, we conclude that the doctrine of res judicata does not preclude George's FEHA claim. Although the doctrine may have precluded relitigation of certain issues related to George's FEHA claim, it did not preclude the FEHA cause of action in its entirety. Consequently, summary judgment properly was denied.

## II. *Substantial evidence*

The Agency contends the jury's verdict is not supported by substantial evidence because there is no evidence to support a conclusion that George engaged in protected activity or that a nexus exists between her DFEH charge and the suspensions imposed. When a judgment or finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of the appellate court begins and ends with the determination of whether there is any substantial evidence, contradicted or uncontradicted, that will support the finding or judgment. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Substantial evidence is evidence of ponderable legal significance, reasonable in nature, and of solid value. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 52 [76 Cal.Rptr.2d 356]; *County of Mariposa v. Yosemite West Associates* (1988) 202 Cal.App.3d 791, 807 [248 Cal.Rptr. 778].) In reviewing the record for substantial evidence, we are required to review the entire record in the light most favorable to the judgment. (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1260 [76 Cal.Rptr.3d 632].)

### A. *Causal link to adverse action*

■ In order to prevail on her FEHA claim, George was required to prove that the suspensions resulted from retaliatory animus rather than other causes. (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 112 [16 Cal.Rptr.3d 717].) In other words, there must be a causal link between the protected activity and the employer's action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)

■ The Agency relies upon *Yanowitz v. L'Oreal USA, Inc.*, arguing that, under *Yanowitz*, an employee must show that his or her protected activity was the result of a reasonable and good faith belief that the employer acted unlawfully, in this case that the Agency discriminated against female ALJ's in making travel assignments. George counters that the reasonable good-faith-belief test of *Yanowitz* does not apply to the "participation clause" of FEHA's retaliation provision. The FEHA makes it unlawful for an employer to retaliate against an employee who has opposed any discriminatory action (the "opposition" clause) *or* who has filed a complaint, testified, or assisted in a FEHA proceeding (the "participation" clause). (Gov. Code, § 12940, subd. (h).) George argues that her DFEH charge is protected activity falling under the participation clause of the FEHA, and there is no requirement that she prove she acted reasonably or in good faith when she filed her charge with the DFEH.

We agree with George that the Agency has misapplied *Yanowitz v. L'Oreal USA, Inc.* The issue in *Yanowitz* was whether the refusal to follow an employer's directive, based on the erroneous belief that the directive violated the FEHA, was protected activity under the FEHA. (*Yanowitz v. L'Oreal USA, Inc., supra,* 36 Cal.4th at p. 1042.) In other words, did the employee's failure to follow the employer's order constitute opposition to discriminatory practices (protected activity under FEHA), if the order was later determined to be lawful? *Yanowitz* concluded such activity was protected if the employee acted in good faith and with a reasonable belief that the employer's order (the action opposed) was discriminatory. (*Yanowitz, supra,* at p. 1042.) *Yanowitz* did not suggest that an employee has to show that his or her DFEH charge was filed with a reasonable and good faith belief that the charge was well founded. To the contrary, the Agency's reading of *Yanowitz* improperly inserts a new element into a retaliation claim when the claim is based on conduct expressly identified by the statute as protected—the filing of a DFEH charge. (Gov. Code, § 12940, subd. (h).)

■ It has long been the law that whether an employee's formal or informal complaint is well founded is *immaterial* to a FEHA retaliation claim. (See Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2009) ¶ 7:734, p. 7-113 (rev. # 1, 2008), and authorities cited therein; see also *Davis v. State University of New York* (2d Cir. 1986) 802 F.2d 638, 642 [finding of unlawful retaliation not dependent on merits of underlying discrimination complaint].) The problem in *Yanowitz v. L'Oreal USA, Inc.,* is that the employee's action would in most situations constitute justifiable grounds for discipline. Obviously, an employee is not free to disobey an employer's directives ad hoc. The issue in a retaliation claim is thus whether the employee's action in disobeying the order is, under the circumstances, protected activity by FEHA. If so, the employee's action could not be used to justify discharge even though it might otherwise, in other circumstances, do so. In order to answer this question, the courts, particularly *Yanowitz* and its progeny, require that the opposition be done in good faith. In contrast, here the relevant question (whether George engaged in protected activity) is answered in the statute itself. Her action is protected under the participation clause of the statute; she filed a DFEH charge. (Gov. Code, § 12940, subd. (h).) Consequently, a *Yanowitz* analysis is not required.[2]

---

[2] Even if we were to read *Yanowitz v. L'Oreal USA, Inc.,* as requiring that every protected activity be reasonable and based on a good faith belief that the employee is challenging unlawful activity, we would conclude the record here is sufficient to support such a finding. George had been told that two male ALJ's were allowed to choose their assignments before the female ALJ's were given their assignments. She researched the assignments and determined that one of the male ALJ's had consistently had smaller, shorter trips and more favorable overnight trips than the other ALJ's. After hearing about other accommodations made for the ALJ's and their travel preferences, George came to the conclusion that the preferences given to

B. *Nexus to protected activity*

■ Similarly, we reject the Agency's claim that there is no evidence to support a nexus between the filing of the first DFEH charge and the suspensions. First, we reject the Agency's contention that Temple's statements to George, made before her November 2001 DFEH charge, that George would be "sorry" if she pursued her complaints, are inadmissible. Temple testified that she was worried the complaints would adversely impact the Fresno travel assignments by resulting in a standardized system that would not allow for individual preferences or accommodate individual needs. Temple also confirmed that she was aware George had filed a DFEH charge prior to Temple becoming the presiding ALJ and before the suspensions. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 70 [105 Cal.Rptr.2d 652] [employer's knowledge of protected activity is essential element to required causal link in retaliation cases].) Temple's statement and her belief that the Fresno office would be adversely impacted by George's complaints were relevant to the issue of retaliatory intent, and were admissible for this reason. (Evid. Code, §§ 210, 351.) The timing of retaliatory action or animus is not necessarily determinative of its evidentiary value. (See *Steele v. Youthful Offender Parole Bd., supra*, 162 Cal.App.4th at p. 1254 [preemptive action against prospective complainants is no less retaliatory than action taken after the fact].)

■ Secondly, contrary to the Agency's assertion, this statement provides direct evidence of the nexus needed to prove George's claim of retaliation. It is certainly possible to interpret Temple's statement as meaning she simply believed George would regret her advocacy for a change because George and others would find a standardized system of assigning travel less desirable. The jury, however, was free to read Temple's statement as a warning that George would suffer retaliation for her actions. (See *Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816 [89 Cal.Rptr.2d 505] [direct evidence of retaliation may include remarks by decision maker that can be interpreted as indicating an intent to retaliate for complaints of discrimination].)

---

the male ALJ's "tipped" the system, resulting in unfairness to the female ALJ's. Although the Agency has argued that other evidence refuted these findings and that George herself had knowledge that tended to discredit her claim that the travel assignments were gender based, the reasonable good faith test does not require that the employee see the evidence the same way as the employer. (*Blank v. Coffin* (1942) 20 Cal.2d 457, 461–462 [126 P.2d 868] [jury need not draw inference of fact from circumstantial evidence even though circumstantial evidence may rationally support the inference].)

Even if Temple's statement is not deemed a direct threat of retaliation, the inference may be drawn that Temple's displeasure with the way things turned out (Sacramento imposing the standardized travel assignments as Temple had predicted) gave rise to retaliatory intent. When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the fact finder, even if the reviewing court might have reached a contrary conclusion. (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143 [131 Cal.Rptr.2d 771].)

■ At the time of the suspensions, Temple was the decision maker. Direct statements by the decision maker that suggest a retaliatory intent, even if made prior to reaching decision maker status, are sufficient to support a finding of retaliatory intent if the fact finder wishes to draw the necessary inferences. (See *Iwekaogwu v. City of Los Angeles, supra,* 75 Cal.App.4th at p. 816.) Although other evidence might support a contrary view, Temple's statements are not the only evidence that supports an inference of nexus. (See *Veprinsky v. Fluor Daniel, Inc.* (7th Cir. 1996) 87 F.3d 881, 894 [employer's evidence is not so strong that no rational fact finder could draw contrary inference that retaliatory motive played substantial role in decision to discipline].) Other supporting inferences could be drawn from (1) the relatively close timing between when Temple assumed the presiding ALJ position and the marked change in how George was treated; (2) the cool communication between Temple and George; (3) George's prior discipline-free, 12-year work history; and (4) the number of allegations Temple made and used to support the suspensions that were deemed unfounded by the Board. ■ It is well established that a plaintiff in a retaliation case need only prove that a retaliatory animus was at least a substantial or motivating factor in the adverse employment decision. (See *Terry v. Ashcroft* (2d Cir. 2003) 336 F.3d 128, 140–141; *Fierros v. Texas Dept. of Health* (5th Cir. 2001) 274 F.3d 187; *Medlock v. Ortho Biotech, Inc.* (10th Cir. 1999) 164 F.3d 545, 551.) We conclude there is substantial evidence to support the jury's verdict.

III. *Economic damage award**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1475.

## *DISPOSITION*

The judgment is affirmed. Costs are awarded to the respondent.

Cornell, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 24, 2010, S179533. Baxter, J., did not participate therein.