Filed 7/15/13  Young v. Mountain Empire Unified School Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DIANE K. YOUNG, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MOUNTAIN EMPIRE UNIFIED SCHOOL DISTRICT, <br><br> Defendant and Appellant. | D061228 <br><br><br> (Super. Ct. No. 37-2010-00065929-CU-OE-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed as modified.

Stutz Artiano Shinoff & Holtz, Daniel R. Shinoff and Paul V. Carelli IV for Defendant and Appellant.

Law Office of David A. Miller and David A. Miller for Plaintiff and Respondent.

Mountain Empire Unified School District (MEUSD) appeals from an adverse judgment after a bench trial in a lawsuit brought by former high school principal Diane Young alleging that she was unlawfully demoted in retaliation for reporting sexual

harassment by MEUSD's former superintendent. MEUSD contends that (1) the trial court's finding that MEUSD retaliated against Young in violation of the Fair Employment and Housing Act (Govt. Code, § 12940 et seq.)[1] (FEHA) is not supported by substantial evidence; (2) the trial court abused its discretion by making a purportedly excessive award of attorney fees to Young; and (3) the trial court should have awarded postjudgment interest at the rate of 7 percent per annum instead of 10 percent. We conclude that postjudgment interest should have been awarded at the rate of 7 percent per annum, but that MEUSD's remaining arguments lack merit. We accordingly modify the judgment to correct the postjudgment interest rate, and we affirm the judgment as modified.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Young became the principal of Mountain Empire High School, which is a part of MEUSD. Patrick Judd was the superintendent of MEUSD at the time.

According to Young, Judd made several crude and unwelcome sexual comments and advances toward her in 2006 and 2007. Several other employees of MEUSD told Young that they had been sexually harassed by Judd. In late 2007, Young contacted the MEUSD school board about the sexual harassment that Judd had directed toward her and the other employees. Young met with school board president Ken Northcote to explain

---

[1]     Unless otherwise indicated, all further statutory references are to the Government Code.

her allegations against Judd.  According to Young, Northcote told her that he had been friends with Judd for many years.

As a result of Young's report, MEUSD conducted an investigation, including retaining an investigator who interviewed Young in December 2007.  Judd retired from his position at MEUSD in March 2008, and he was replaced by a interim superintendent, Donald Haught.

Steven Van Zant became MEUSD's permanent new superintendent in July 2008. Young testified that she tried to inform Van Zant about the reason for Judd's departure, but Van Zant cut her off and did not listen to her, which made her uncomfortable.

According to Young's testimony, she perceived an immediate negative attitude from Van Zant toward her and believed that he was attempting to retaliate against her for reporting Judd's harassment.  Young stated that even before Van Zant officially took over as superintendent, he started criticizing her performance by making negative comments about the graduation ceremony, which she believed were unfounded.  Early in the school year, Van Zant criticized Young's handling of a football game, complaining that there were not two ambulances on site, although, according to Young, it is the role of the athletic director to arrange for the presence of ambulances and budgetary issues limited ambulance availability.

Van Zant verbally informed Young in February 2009 that he might remove her from the position of principal.  At the time, according to Young, Van Zant said the removal was because Young did not have good football game management skills and because of her absences from campus, but gave no other reasons.

3

On March 12, 2009, Van Zant sent a written notice to Young, pursuant to Education Code section 44951, informing her that she "may be released from [her] present position as High School Principal and reassigned to a classroom position, effective at the beginning of the 2009-[20]10 school year." On the same date, Van Zant gave Young three memoranda.

The first memorandum contained a list of "directives" that Van Zant expected Young to follow, such as (1) being on site each day from 7:00 a.m. to 3:00 p.m. unless she received express permission to leave; (2) providing "personal leadership to [her] staff through solving problems — not just passing them on to another leadership team member"; and (3) preparing various reports and plans regarding the high school.

The second memorandum was an addendum to Young's February 2009 mid-year evaluation. The memorandum evaluated whether Young made progress in areas that had been identified as her three performance goals: (1) decreasing referrals and suspensions; (2) increasing skills in differentiated teaching, thereby increasing test scores and student learning; and (3) providing opportunities for staff to develop certain collaborative skills and involving parents in the community. Van Zandt commented negatively on Young's progress toward meeting the three goals, stating that he had not seen evidence of Young's actions in several areas. He concluded by saying that "[a]t this time, I lack confidence in your ability to effectively lead the school in a direction that is positive and productive."

The third memorandum set forth eight concerns with Young's work performance and explained that Van Zant would be "conducting an exacting review of [Young's] performance" to make a final determination on whether to reassign her. The eight

4

concerns involved (1) Young's attendance at work; (2) Young's ability to supervise underperforming employees and deal with difficult employee situations; (3) Young's approach to student discipline; (4) Young's lack of a defined strategy to improve student performance; (5) Young's failure to provide adequate programs for at-risk and English-language-learner students; (6) Young's lack of focus on a vision and plan to create future success for the school; (7) Young's failure to provide adequate programmatic supervision for ROP [regional occupational program], athletics and special education programs; and (8) Young's insufficient grasp of the skills necessary to prepare a budget and a school master schedule.

Young responded in writing to Van Zant's eight enumerated concerns, specifically addressing each item and providing supporting documentation in some instances or asking for clarification in other instances. For example, regarding Van Zant's criticism of her absences from campus, Young provided Van Zant with documentation showing that the absences were approved or were for school business or health reasons.

Around this time, Young spoke individually with school board members and gave them information rebutting Van Zant's criticisms.

The school board voted to reassign Young at a May 13, 2009 meeting, and Van Zant sent Young a notification letter on that date, stating that she was being reassigned to the classroom at the beginning of the 2009-2010 school year, which meant a significant reduction in pay. Young believed that she was being demoted in retaliation for reporting Judd's sexual harassment.

In response to Young's request that she be given a reason for the reassignment, Van Zant sent Young a letter on June 3, 2009, stating that the "reason for this action was loss of confidence in your ability to function effectively as part of the current management team of the District."

Young filed a complaint against MEUSD alleging three causes of action under FEHA: (1) unlawful retaliation in violation of section 12940, subdivision (h); (2) failure to take immediate, appropriate corrective action in violation of section 12940, subdivision (j)(1); and (3) failure to prevent retaliation in violation of section 12940, subdivisions (j) and (k).

The trial court conducted a bench trial over the course of several days. After taking the matter under submission, the trial court issued a 20-page statement of intended decision, finding in favor of Young on the causes of action for retaliation and failure to prevent retaliation, awarding Young $150,000 in non-economic damages. Among the trial court's findings was that "[Young's] report of sexual harassment by Mr. Judd was a motivating reason for [MEUSD] to demote [Young]." The trial court discussed the specific evidence that had convinced it that "the reasons cited by [MEUSD] to demote [Young] were a pretext," including that Young had refuted the factual validity of several of Van Zant's criticisms of her job performance. After considering MEUSD's objections, the trial court confirmed its statement of decision and entered judgment in favor of Young.

Young filed a motion for attorney fees, seeking an award based on a lodestar calculated on an hourly rate of $475 for her attorney, David A. Miller, plus a multiplier of

1.6. MEUSD did not challenge the reasonableness of the hours spent by Miller on the litigation, but argued that an hourly rate of $475 was too high and that a multiplier should not be applied. The trial court granted the motion for attorney fees in the amount requested by Young, for a total fee award of $439,645.

MEUSD appeals, contending that (1) insufficient evidence supports the trial court's findings in favor of Young; (2) the trial court abused its discretion by awarding an excessive amount of attorney fees; and (3) the trial court improperly awarded postjudgment interest at the rate of 10 percent instead of 7 percent.

II

DISCUSSION

A. *Substantial Evidence Supports the Trial Court's Findings That MEUSD Unlawfully Retaliated Against Young*

We first address MEUSD's challenge to the sufficiency of the evidence to support the trial court's findings in favor of Young.

1. *Standard of Review*

"When a judgment or finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of the appellate court begins and ends with the determination of whether there is any substantial evidence, contradicted or uncontradicted, that will support the finding or judgment. [Citation.] Substantial evidence is evidence of ponderable legal significance, reasonable in nature, and of solid value. [Citations.] In reviewing the record for substantial evidence, we are required to review the entire record in the light most favorable to the judgment." (*George v.*

7

*California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1489

(*George*).) "When two or more inferences can reasonably be deduced from the facts, a

reviewing court is without power to substitute its deductions for those of the fact finder,

even if [we] might have reached a contrary conclusion." (*Id*. at p. 1492.)

      2.      *Applicable Legal Standards for Retaliation Claims Under FEHA*

The fundamental statutory provision at issue here is FEHA's anti-retaliation

provision, which makes it unlawful "[f]or any employer . . . to discharge, expel, or

otherwise discriminate against any person because the person has opposed any practices

forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted

in any proceeding under [FEHA]." (§ 12940, subd. (h).) There is no dispute that making

a report of sexual harassment, as Young did here, qualifies as opposing a practice

forbidden under FEHA for the purpose of a retaliation claim. (Cf. § 12940, subd. (j)(1)

[identifying sexual harassment as an unlawful practice under FEHA].)

"The elements of a claim for retaliation in violation of section 12940, subdivision

(h), are . . . : (1) the employee's engagement in a protected activity, i.e., 'oppos[ing] any

practices forbidden under this part'; (2) retaliatory animus on the part of the employer;

(3) an adverse action by the employer; (4) a causal link between the retaliatory animus

and the adverse action; (5) damages; and (6) causation." (*Mamou v. Trendwest Resorts,

Inc.* (2008) 165 Cal.App.4th 686, 713 (*Mamou*).)[2] "Proof of two of these elements —

---

2     In accordance with these elements, the California Civil Jury Instruction (CACI)
No. 2505 – Retaliation states as follows:

8

the second and fourth — is likely to depend on *circumstantial evidence*, since they consist of subjective matters only the employer can directly know, i.e., his attitude toward the plaintiff and his reasons for taking a particular adverse action."  (*Ibid*., italics added.)

3.      *The Trial Court's Finding of Retaliation Is Supported by Substantial Evidence*

MEUSD's challenge to the sufficiency of the evidence to support the retaliation finding focuses on the requirement that Young establish a causal link between her reporting of Judd's harassment and MEUSD's decision to reassign her from the principal position.  MEUSD argues that ". . . Young never demonstrated the proper causal connection between her whistle blowing report[] and the District's demotion of her to classroom teacher."

In determining whether the evidence is sufficient to support a finding in favor of Young on the required causal element, we evaluate whether the evidence supports a

---

"[*Name of plaintiff*] claims that [*name of defendant*] retaliated against [him/her] for [*describe activity protected by the FEHA*].  To establish this claim, [*name of plaintiff*] must prove all of the following:
"1.      That [*name of plaintiff*] [*describe protected activity*];
"2.      [That [*name of defendant*] [discharged/demoted/[*specify other adverse employment action*]] [*name of plaintiff*];]
"[or]
"[That [*name of defendant*] subjected [*name of plaintiff*] to an adverse employment action;]
"[or]
"[That [*name of plaintiff*] was constructively discharged;]
"3.      That [*name of plaintiff*]'s [*describe protected activity*] was a motivating reason for [*name of defendant*]'s [decision to [discharge/demote/[*specify other adverse employment action*]] [*name of plaintiff*]/conduct];
"4.      That [*name of plaintiff*] was harmed; and
"5.      That [*name of defendant*]'s conduct was a substantial factor in causing [*name of plaintiff*]'s harm."

9

finding of "a causal link between the protected activity and the employer's action." (*George*, *supra*, 179 Cal.App.4th at p. 1489.) It is sufficient if the "retaliatory animus was at least a *substantial or motivating factor* in the adverse employment decision"; it need not be the *sole* motivating factor. (*Ibid.*, italics added.)[3]

"Both direct and circumstantial evidence can be used to show an employer's intent to retaliate. 'Direct evidence of retaliation may consist of remarks made by decisionmakers displaying a retaliatory motive. [Citation.]' [Citations.] Circumstantial evidence typically relates to such factors as the plaintiff's job performance, the timing of events, and how the plaintiff was treated in comparison to other workers." (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1153 (*Colarossi*).)

Here, the trial court's statement of decision identified numerous items of circumstantial evidence that support an inference that MEUSD demoted Young in retaliation for her reporting of Judd's sexual harassment.

First, as the trial court explained, the evidence supported a finding that Young performed very well in her position as principal, with many accomplishments, and that she was valued by students, parents and the community. Favorable job performance is

---

3    As we have explained, the trial court found in favor of Young on two of her causes of action — unlawful retaliation and failure to prevent unlawful retaliation. MEUSD challenges the findings on both causes of action but bases its challenge in both instances on an identical argument. Specifically, MEUSD argues that insufficient evidence supports a finding that MEUSD took any retaliatory action, and therefore neither a cause of action for retaliation *nor* a cause of action for failure to prevent retaliation can stand. Our conclusion that substantial evidence supports a finding that MEUSD retaliated against Young disposes of MEUSD's appellate challenges to both causes of action.

one aspect of circumstantial evidence that a trial court can reasonably rely on to infer that the plaintiff suffered an adverse employment action based on impermissible reasons. (*Colarossi*, *supra*, 97 Cal.App.4th at p. 1153.)[4]

Second, the evidence supported a finding that at least some of Van Zant's asserted criticisms of Young's job performance were demonstrably not based in fact and were shown by Young to be inaccurate.  In its statement of decision, the trial court closely reviewed the evidence concerning several of Van Zant's criticisms of Young, and explained — with specific citations to trial testimony and to trial exhibits — that the evidence supported a finding that Van Zant's criticisms were not well founded or that Young's description of the factual background for certain of those issues was more credible than Van Zant's.  Indeed, Young presented evidence to rebut Van Zant's criticism of Young's absences from campus, employee supervision, student discipline, student performance, Young's focus on the future success of the school, Young's programmatic supervision, and Young's possession of the necessary skills to be an effective principal. We have reviewed the record as to all of those issues and have found substantial support

---

[4]     MEUSD argues that "the trial court appeared to focus on the positive, and then question why [MEUSD] would want to demote Young."  According to MEUSD, "that is not the test."  We reject MEUSD's argument.  As we read the trial court's analysis, it did *not* focus solely on Young's successes as principal.  Instead, the trial court properly considered Young's successes, along with other circumstantial evidence — including Van Zant's questionable criticisms and evidence of Van Zant's relationship with Judd — to conclude that Young's reassignment was motivated by retaliation.

for the trial court's conclusion that several of Van Zant's criticisms of Young were not based on the facts.[5]

Based on this evidence, the trial court could reasonably conclude that "the reasons cited by [MEUSD] to demote [Young] were a pretext." The finding of pretext is significant because "evidence that the employer's claimed reason is *false — such as that it conflicts with other evidence, or appears to have been contrived after the fact — will tend to suggest that the employer seeks to conceal the real reason for its actions, and this in turn may support an inference that the real reason was unlawful." (*Mamou*, *supra*, 165 Cal.App.4th at p. 715.) As the trial court reasonably did in this case, a finder of fact "can take account of manifest weaknesses in the cited reasons in considering whether those reasons constituted the real motive for the employer's actions, or have instead been asserted to mask a more sinister reality." (*Ibid.*)

Third, the evidence supports the trial court's finding that Judd had a relationship with both school board member Northcote and with Van Zant that was stronger than any of those men claimed during their testimony. Specifically, this finding could reasonably be based on, among other things, (1) the trial court's negative assessment of Northcote's credibility; (2) the testimony describing Northcote's reaction when Young reported Judd's

---

5      For example, as we have described, Young presented Van Zant with documentation showing that her absences from campus were approved, and were for school business or for health reasons, and at trial, Young extensively discussed the evidence supporting all of her rebuttals to Van Zant's criticisms. The testimony of a single witness is sufficient to prove a fact. (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031.)

harassment to him; (3) the testimony by Deputy Keith Nye that he twice saw Judd and Van Zant lunching together after Van Zant became superintendent, and that several school board members told him that Judd and Van Zant were friends;[6] and (4) the trial court's assessment that Judd's denial of recent contact with Van Zant was not credible because Judd was forced to admit during his testimony that he had attended a board meeting for a nonprofit organization with Van Zant despite his denial of any contact.

The circumstantial evidence we have described — Young's positive job performance, the demonstrable problems with Van Zant's criticisms of Young, and the relationship that the trial court reasonably found to exist between Van Zant, Judd and Northcote — collectively constitute substantial evidence to support the trial court's finding that MEUSD removed Young from her position as principal, at least in part, in retaliation for her reporting of Judd's harassment rather than because of the reasons identified by Van Zant.

---

6    MEUSD suggests that Deputy Nye's testimony was suspect because Deputy Nye is engaged to Young.  However, the trial court was entitled to make credibility determinations as it saw fit, which it is not our role to second guess. (*People v. Jones* (1990) 51 Cal.3d 294, 314 [in review for substantial evidence, "it is the exclusive province of the trial judge or jury to determine the credibility of a witness," and "we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder"].)  The trial court expressly stated that it found Nye's testimony about seeing Judd and Van Zant together to be credible, and we may not disturb that determination.

13

4. *MEUSD's Arguments Regarding the Insufficiency of the Evidence as to Causation Lack Merit*

MEUSD presents several specific arguments in its attempt to challenge the evidentiary support for the trial court's causation finding, but as we will explain, none of them have merit.

First, MEUSD focuses on the length of time between Young's late 2007 report of Judd's sexual harassment and the May 2009 notification that Young would be removed from the principal position. MEUSD argues that "the length of time elapsing between the report of harassment and the ultimate demotion is problematic" for a finding that the demotion was based on retaliation. Specifically, MEUSD relies on case law arising under federal employment discrimination law, such as *Villiarimo v. Aloha Island Air, Inc.* (9th Cir. 2002) 281 F.3d 1054, 1065, in which the Ninth Circuit explained that "in some cases, causation can be inferred from timing *alone* where an adverse employment action follows on the heels of protected activity" but that "timing *alone* will not show causation in all cases; rather, 'in order to support an inference of retaliatory motive, the termination must have occurred "fairly soon after the employee's protected expression." ' " (*Ibid.*, italics added.)

This argument is misplaced because, according to the trial court's own explanation of its findings, it did not infer a causal connection between Young's report of harassment and Young's removal from the principal position based *solely* on the timing of those events. Instead — as we have explained — the causation finding is supported primarily by the trial court's determination — based on evidence in the record — that Van Zant's

14

reasons for criticizing Young's job performance were not credible and that Van Zant and Northcote had a relationship with Judd, raising a motive for retaliation. Contrary to MEUSD's suggestion, this is not a case in which an inference of causation was based on "timing alone." Accordingly, in order to establish causation, Young was not required to show that there was a short time frame between her report of harassment and the adverse employment action by MEUSD.

Further, although a "long period between an employer's adverse employment action and the employee's earlier protected activity may lead to the inference that the two events are not causally connected," "if between these events the employer engages in a pattern of conduct consistent with a retaliatory intent, a causal connection" may exist. (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 421, citation omitted (*Wysinger*).) Here, although it was not until March 2009 that Van Zandt gave official notice to Young of the possible reassignment to the classroom (and not until May 2009 that a final decision on the reassignment was made), the evidence supports a finding that Van Zant started criticizing Young's performance and laying the groundwork for the adverse employment action as soon as he became superintendent in July 2008.[7] That date was only a few months after Young reported the harassment. Viewed in that light, the lapse of time between Young's report of harassment in late 2007 and her

---

[7] Indeed, Van Zant admitted in his testimony that in October or November 2008 he first had the thought that Young should be removed from her position of principal.

15

removal as principal in mid-2009 does not undermine the reasonableness of the trial court's finding that Young's demotion was caused, at least in part, by retaliation.[8]

Next, MEUSD argues that the trial court's finding of causation was not supported by substantial evidence because MEUSD "offered evidence of a legitimate, nondiscriminatory reason for the termination." MEUSD contends that the evidence showed that, for several reasons, ". . . Van Zant did not feel that Young was the best person for the job, and he recommended her reassignment to the Board."

As an initial matter, we note that in MEUSD's discussion of whether it offered evidence of a legitimate nondiscriminatory reason for its demotion of Young, it has confused the legal standards applicable to a *summary judgment motion* in a FEHA case with the legal standards applicable in our review of findings following a *trial*. In support of its appellate argument, MEUSD improperly refers to the burden shifting analytical structure intended for use in ruling on summary judgment motions in employment discrimination actions, described by the United States Supreme Court in *McDonnell*

---

[8] MEUSD argues that we should not view Van Zant's earlier criticism of Young as motivated by retaliation because Young did not complain to an administrator or school board member of retaliation during that time. MEUSD's argument is not persuasive. Young testified that she perceived Van Zant's criticism as retaliatory from the beginning, and she submitted evidence supporting an inference that certain of Van Zant's early criticisms of her — including his comments about graduation and management of football games — were questionable. Regardless of whether Young complained to someone in authority about her early suspicion of Van Zant's retaliatory motive, a reasonable trier of fact could still infer that Van Zant had started laying the groundwork for a retaliatory action as soon as he assumed the position of superintendent. Moreover, Young testified that when it became clear — through Van Zant's notification — that Van Zant was intending to remove her from her position, she expressed her suspicion of retaliation to school board members.

16

*Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*) and our Supreme Court in *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 355. Under that approach, the employee raises a presumption of discrimination by presenting a prima facie case, which the employer may dispel by *articulating* a legitimate, nondiscriminatory reason for the challenged action. (*Guz*, at p. 355.)

As Young correctly points out, the burden shifting framework has no application here, where the case has proceeded to trial. When "the case is submitted to the trier of fact, the intermediate burdens set forth in *McDonnell Douglas* will fall away, and the fact finder will have only to decide the ultimate issue of whether the employer's discriminatory intent was a motivating factor in the adverse employment decision." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 205.) Thus, our analysis does not turn on whether or not MEUSD has articulated a legitimate reason for removing Young as principal.

Instead, we focus on whether — despite evidence of legitimate reasons for Young's reassignment — *any* substantial evidence supports a finding that those legitimate reasons are pretextual and that Young's demotion was *in fact* motivated by retaliation for her reporting of Judd's harassment. Here, as we have explained, substantial evidence supports the trial court's determination that although MEUSD did put forth several reasons that it claimed to be the legitimate bases for removing Young from her position, those reasons were pretextual and the adverse employment action was, at least in part, based on retaliation. At trial, it is not enough for MEUSD to *identify* legitimate reasons for removing Young and to offer some supporting evidence; in order to support a

17

judgment for MEUSD, the finder of fact has to *believe* those reasons. Here, the record sufficiently supports the trial court's finding that MEUSD's reasons for Young's reassignment were not credible.[9]

Finally, MEUSD argues that the evidence is insufficient to show that Young's removal as principal was caused by retaliation because it is *the school board* that made the ultimate decision whether to remove Young. MEUSD argues that the record contains no evidence of animus on the part of the school board, and that ". . . Young ultimately was required to prove that the Board as a whole was retaliating for her sexual harassment report." This argument fails because "the plaintiff can establish the element of causation by showing that *any* of the persons involved in bringing about the adverse action held the requisite animus, provided that such person's animus operated as a 'but-for' cause, i.e., a force without which the adverse action would not have happened." (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 108.) Here, the evidence is undisputed that the school board voted to remove Young from the position of principal because of Van Zant's

---

9  MEUSD relies on *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367 to argue that the evidence was insufficient to support a finding that retaliation was one of the motives for Van Zant's removal of her from the principal position. *Jones* is inapposite. It concerns the issue of whether, in opposing a summary judgment motion, the plaintiff submitted sufficient evidence to create an inference that the harassment she experienced was based on her gender or race. *Jones* concluded that plaintiff had not submitted sufficient evidence to support such an inference, especially in light of the fact that she stated during her deposition testimony that she did not know whether specific incidents were prompted by her gender or race. (*Id.* at pp. 1378-1379.) This is not a harassment case; this appeal does not arise in the context of a summary judgment motion, and Young never expressed any uncertainty as to Van Zant's motivation.

recommendation as superintendent of MEUSD. Thus, regardless of whether any of the school board members were motivated by retaliatory animus, the inference that Van Zant acted to retaliate against Young is sufficient to support the trial court's finding of retaliation against MEUSD.

In sum, we conclude that substantial evidence supports the trial court's finding of unlawful retaliation against MEUSD.

B.      *The Trial Court Did Not Abuse Its Discretion in Determining the Amount of Attorney Fees Awarded to Young*

Next, we address MEUSD's challenge to the trial court's award of $439,645 in attorney fees to Young. Although MEUSD does not take issue with the principle that Young was statutorily eligible for an award of reasonable attorney fees as a prevailing plaintiff in a lawsuit brought under FEHA (§ 12965, subd. (b)), and does not challenge the number of hours that Young's attorney, David Miller, devoted to this litigation, it argues that the amount of the award was too high. Specifically, MEUSD contends that (1) the trial court should not have concluded that $475 was a reasonable hourly rate for Miller, and (2) the trial court should not have applied a 1.6 multiplier in setting the amount of the fee award. MEUSD contends that the amount of the award "shocks the conscience."

We apply an abuse of discretion standard in reviewing the trial court's award of attorney fees. (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 445 (*Vo*).) "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it

19

will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 (*Serrano*).)

"The determination for fees under section 12965 must be based upon a proper utilization of the lodestar method.  [Citations.]  In California, the lodestar method requires the trial court to first determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney.  [Citations.]  The trial court may then augment or diminish the touchstone figure by taking various relevant factors into account.  [Citations.]  In *Serrano . . .* , *supra*, 20 Cal.3d at page 49, the California Supreme Court identified the relevant factors in that case as follows:  'Among these factors were:  (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bring[ing] law suits of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; and (7) the fact that in the court's view the two law firms involved had approximately an equal share in the success of the litigation.'  (Fn. omitted.)"  (*Vo, supra*, 79 Cal.App.4th at pp. 445-446, capitalization altered.)

Here, the trial court determined that $475 was a reasonable hourly fee based on evidence in the record. Young's motion for attorney fees was supported by Miller's own declaration, which described his extensive experience and stated that his hourly rate was $475 per hour, which he had been awarded in a similar FEHA case. Further, the motion was supported by the declaration of three other attorneys who handle similar cases, all of whom stated that a rate of $475 per hour was reasonable and commensurate with fees charged by other lawyers of similar skill and expertise.[10]

MEUSD argues that the trial court should have relied on the evidence that MEUSD filed in opposition to the fee motion, which were declarations submitted by attorneys in different employment law matters in 2009, 2010 and 2011. Those declarations set forth the attorneys' hourly rates in those cases, which ranged from $305 to $325. One declaration — filed in an employment case in 2009 — opined that it is customary to award $350 per hour or more throughout California in such matters.

We conclude that MEUSD's challenge to the trial court's selection of $475 as a reasonable hourly rate is without merit. "The amount of fees is within the sound discretion of the trial court and the trial judge is in the best position to evaluate the quality of legal services at trial." (*Wysinger*, *supra*, 157 Cal.App.4th at p. 430.) Although the trial court would have been within its discretion to credit MEUSD's

---

[10] Despite MEUSD's attempts to discredit the declarations by pointing out that they do not contain certain information, such as the rate charged by the declarants, the trial court was within its discretion to credit the declarants' statements that — based on their knowledge and expertise — the hourly rate of $475 was reasonable and customary for Miller to charge in this litigation.

21

evidence and arrive at a different conclusion, it certainly was not required to do so. Here, the trial court reasonably relied on the evidence submitted by Young, as well as its own experience in the litigation, to decide that "the skills, training, experience and expertise reflected by Mr. Miller" supported an award of $475 per hour as a reasonable attorney fee.

We also reject MEUSD's argument that the trial court erred in applying a multiplier. As we have explained, our Supreme Court has identified a number of different factors that can enter into a decision to apply a multiplier to a lodestar calculation. (*Serrano*, *supra*, 20 Cal.3d at p. 49.)

Here, the trial court expressly identified the following three factors: "(1) the contingent nature of the representation; (2) the risk involved in taking this litigation; [and] (3) the policy behind the litigation and the need for the public entity to have a policy regarding sexual harassment and retaliation" as supporting the application of a multiplier. Those factors are pertinent here, as Miller's representation of Young involved risk, was contingent and the evidence showed that MEUSD did not have a policy against retaliation.

MEUSD suggests that a more appropriate multiplier would have been 1.25 rather than 1.6, citing *Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 627, which approved a 1.25 multiplier in a sexual orientation harassment case brought by students against a school district. However, each litigation is different, and the trial court was not "'clearly wrong'" (*Serrano*, *supra*, 20 Cal.3d at p. 49) to conclude that 1.6 rather than 1.25 was an appropriate multiplier to compensate counsel for the successful

22

representation of Young in this action, as it identified three pertinent reasons for applying the multiplier, and because "'[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise.'" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096.)[11] In sum, the trial court's award of attorney fees does not "shock the conscience" as MEUSD contends. Instead, it was properly based on a reasonable analysis under the applicable lodestar method.

C.     *The Trial Court Erred in Setting the Annual Postjudgment Interest Rate at 10 Percent*

In a footnote appearing in the opening brief's review of the procedural history, MEUSD states although the judgment awards postjudgment interest at the rate of 10 percent per annum, it should have been at the rate of 7 percent because MEUSD is a public entity. MEUSD states that it "seeks a correction to this rate in the event that the judgment is affirmed." Although MEUSD does not raise this issue in the argument portion of its brief, we will exercise our discretion to address it as an issue within the scope of this appeal, as Young has had an opportunity to respond.

Here, the judgment's award of postjudgment interest to Young at the rate of 10 percent per annum was likely arrived at by applying Code of Civil Procedure section

---

11     MEUSD argues that if the trial court was attempting to apply a multiplier that would provide interest to Miller for the delay in payment caused by the fact that he was performing work under a contingency agreement, it would have been appropriate for the trial court to select a lower multiplier to approximate a customary interest rate. We reject this argument because there is no indication in the record that the trial court was attempting to award interest. Instead, as we have explained, the trial court set forth three factors that it found supported the application of a multiplier, none of which expressly concerned the awarding of interest.

685.010, subdivision (a), which states that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." (*Ibid.*) However, our Supreme Court has determined that this statutory provision is not applicable when a local public entity is a defendant in a litigation because section 970.1, subdivision (b) "plainly and expressly exempts local public entities from the application of title 9 of the Code of Civil Procedure *as a whole*, including . . . section 685.010." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 347.) Thus, in the case of local public entities, article XV, section 1, of the California Constitution applies, which states: "In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum." As the Legislature has not specifically provided for a different rate for postjudgment interest against a public entity, "the applicable rate of postjudgment interest to be paid by local public entities is 7 percent per annum." (*California Fed.*, at p. 345.)

As a school district, MEUSD is a local public entity. (§ 970, subd. (c).) Accordingly, postjudgment interest should have been awarded at the annual rate of 7 percent instead of 10 percent. We will modify the judgment accordingly.

## DISPOSITION

The judgment is modified to award postjudgment interest at the rate of 7 percent per annum.  As modified, the judgment is affirmed.  Young is to recover her costs.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

25