Filed 7/30/13  Georgopoulos v. County of Alameda CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ADAMANTIA GEORGOPOULOS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>Defendant and Respondent. | A134774<br><br>(Alameda County<br>Super. Ct. No. RG10550574) |

Plaintiff was a legal secretary with the County Counsel's Office of defendant County of Alameda (County).  The County Counsel's Office terminated plaintiff's employment for improper behavior.  After an administrative hearing before the Alameda County Civil Service Commission (Commission), the Commission upheld the termination.  Plaintiff, who is Caucasian, then sued County claiming the County Counsel's Office terminated her employment on the basis of race.  The trial court granted County's motion for judgment on the pleadings, ruling that plaintiff's causes of action were barred by either collateral estoppel or failure to exhaust administrative remedies.  Plaintiff appeals from the subsequent judgment of dismissal and contends the ruling on County's motion was erroneous.  We disagree and affirm.

## I. PROCEDURAL BACKGROUND & FACTS

We take the facts from the administrative proceedings before the Commission.

On September 2, 2005, plaintiff began her employment with the County Counsel's Office as a Civil Legal Secretary.  On December 2, 2008, Alameda County Counsel Richard E. Winnie terminated plaintiff for violation of several subdivisions of Civil

1

Service Rule 2104: subdivision (g), willful disobedience; subdivision (h), insubordination; subdivision (j), discourteous treatment of fellow employee; subdivision (n), dishonesty; and subdivision (q), a failure of good behavior or acts during or outside of office hours which are incompatible with or inimical to the public service.

Plaintiff appealed the termination decision to the Commission, which appointed an administrative law judge (ALJ) to hear the matter. The ALJ conducted a four-day evidentiary hearing in late May and early July 2009. The County Counsel's Office called seven witnesses, including Mr. Winnie, and introduced 52 documentary exhibits. Plaintiff called six witnesses, including herself, and introduced two documentary exhibits. On December 3, 2009, the ALJ issued a report and recommendation finding that plaintiff had not been dishonest or insubordinate, but had engaged in rude and discourteous behavior on two occasions in violation of Civil Service Rule 2104, subdivisions (j) and (q).

Specifically, the ALJ found that on September 4, 2008, plaintiff's supervisor asked to speak with her just before the end of the work day. Plaintiff told her supervisor she needed to get promptly home to care for her elderly father, and referred the supervisor to plaintiff's attorney. "The failure of [plaintiff] to have a short meeting with [her supervisor] was considered insubordination. It was also considered unprofessional and rude behavior."[1]

The ALJ further found that on October 30, 2008, plaintiff "was discourteous and disruptive during a staff meeting. She made faces and commented under her breath." When County Counsel Winnie called her up to where he was sitting and commented on her behavior, plaintiff "disrupted the meeting and 'caused a scene.' " Plaintiff "was found to be disrespectful toward Mr. Winnie. Her behavior was found to constitute failure of good behavior and insubordination."[2]

---

[1] Since the ALJ did not find plaintiff was insubordinate, presumably the ALJ means the County Counsel's Office found her behavior insubordinate.

[2] See footnote 1, *ante*.

The ALJ found "[t]hese events must be viewed in the context of the negative atmosphere in the office and how this was perceived by" plaintiff, who claimed the troubles began when she was excluded from a secretarial study group formed for the Civil Service examination.[3]  The ALJ found plaintiff "was intentionally excluded from this group."  After plaintiff complained to her supervisor, she was given some study material and told she had been "forgotten."  Contrary to plaintiff's allegation in her present lawsuit, the study group was not considered inappropriate or illegal because the secretaries were studying on their own time.  And plaintiff scored second place on the exam, "so there was no negative consequence to her exclusion."

The ALJ found the County Counsel's Office "did not evenly apply its authority in investigating reports made by employees.  Reports of misconduct of others toward [plaintiff] were not acted on with the same vigor as misconduct reported by others against" plaintiff.  The ALJ further found:  "In this case, there is a great deal of blame to go around.  While [plaintiff's] behavior was not 'ideal' the behavior of other coworkers, supervisors and administration was not ideal either."

The ALJ determined the evidence did not show plaintiff was dishonest or insubordinate.  She did determine plaintiff "did engage in 'mutual' discourteous treatment of coworkers and 'mutual' failure to [*sic*] good behavior."  Plaintiff, thus, violated subdivisions (j) and (q) of Civil Service Rule 2104.  The ALJ recommended to the Commission that discipline was warranted, but that suspension, not termination, was the appropriate penalty.

After the ALJ issued her report and recommendation, both parties submitted written responsive comments to the Commission, which met on February 10, 2010.  The Commission adopted the ALJ's findings of fact, but determined in its discretion that termination was the appropriate disposition.

---

[3] Plaintiff was hired provisionally and was required to take the exam to become permanent.

The Commission explained its rationale as follows: "If the two incidents of discourteous treatment and failure of good behavior described above were only viewed individually and out of context, they might not be considered serious enough in nature to warrant termination. But the Commission does not view these incidents in a vacuum. When viewed in relation to [plaintiff's] prior discipline record and [plaintiff's] resistance to corrective action, the Commission finds that [plaintiff] engaged in a continuing pattern of unsatisfactory behavior inimical both to the principles of public service and to a professional workplace environment."

The Commission then reviewed the ALJ's factual findings of plaintiff's "troubled work history within the [County Counsel's Office] prior to the events giving rise to her termination." In November 2007, she falsely reported to her supervisor that a coworker was involved in a dispute with a fellow passenger on BART; plaintiff was suspended for one week as a result. In July 2008, she was involved in a confrontation with another coworker over sharing a file system password, and "made an inappropriate comment." She was suspended for two weeks and the suspension was upheld by the Commission on appeal.

The Commission noted the ALJ had found that there was a "negative atmosphere in the office," and a perception of unequal treatment, but concluded these factual findings did not mitigate plaintiff's conduct: "These findings of fact do not absolve [plaintiff] from her duty to act responsibly and in a professional manner."

The Commission went on to review plaintiff's resistance to efforts by the County Counsel's Office to rehabilitate her workplace conduct. After "an incident in April 2007," which the ALJ described as "a negative encounter at the printer" with another legal secretary, plaintiff was sent to a class on how to deal with difficult employees. In March 2008, the County Counsel's Office brought in an outside firm to provide "coaching, training and organizational development" for staff members. The firm provided one-on-one coaching, to which plaintiff was initially open; she then refused the

4

coaching and "terminat[ed] the meeting indicating that she was pursuing her options through legal channels."

"[Plaintiff's] treatment of her supervisor on September 4, 2008 . . . and her very public misbehavior in the October 30, 2008 staff meeting . . . demonstrate her continuing failure to act professionally in the face of her workplace concerns. Taken together with [plaintiff's] history of prior discipline, the Commission finds [plaintiff's] resistance in this regard to be significant because it further demonstrates that discipline did not accomplish its corrective, rehabilitative function" for plaintiff.

The Commission noted it had discretion to determine the appropriate discipline based on the ALJ's findings of fact, and concluded it was "convinced . . . further discipline short of termination will not serve a corrective, rehabilitative function." The Commission upheld the County Counsel's termination decision because "termination, rather than suspension, is the appropriate penalty and is in the best interest of public service [fn. omitted]."

As noted, the Commission issued its decision on February 10, 2010. On May 7, 2010, plaintiff challenged the decision by a petition for writ of administrative mandate filed in superior court, naming the Commission as respondent and the County Counsel's Office as real party in interest. On December 7, 2010, the Alameda County Superior Court (Honorable Frank M. Roesch, Judge) denied the petition on the ground the Commission did not abuse its discretion in terminating plaintiff.

Meanwhile, on December 14, 2009—after the ALJ's report and recommendation of December 3, 2009, but months before the Commission's decision—plaintiff submitted a complaint of discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.) with the California Department of Fair Employment and Housing (DFEH).[4] The one-page form, which plaintiff filled out by hand, claimed the County Counsel's Office terminated plaintiff because of "race/color"

---

[4] Plaintiff dated the complaint December 10, 2009, but DFEH stamped it "Received" on December 14, 2009.

5

and "retaliation for engaging in protected activity or requesting a protected leave or accommodation." (This is the language of the form, which lists various reasons for employer conduct. Plaintiff placed an "x" next to the two reasons quoted.) In the space allowed for stating reasons for the discrimination, plaintiff wrote:

"Group of African-American women, plus one Hispanic, formed a study group (an illegal study group for the Civil exams, Legal Secretary[).] When I reported the matter, they retaliated & discriminated aga[inst] me until I was terminated . . . ."[5]

The same day it received the complaint, December 14, 2009, DFEH issued plaintiff a right-to-sue notice and closed the case. The notice advised plaintiff she had to file suit within one year.

Almost a year later, on December 9, 2010—10 months after the Commission's decision and two days after denial of the petition for writ of administrative mandate—plaintiff filed the complaint which is the subject of the present appeal. The complaint includes factual allegations about the purportedly illegal study group and various instances involving coworkers, almost all of which were a part of the ALJ's factual findings and most of which were mentioned by the Commission in reviewing plaintiff's history of discipline.[6] Plaintiff alleged the County Counsel and some of his employees made her work conditions intolerable by searching for "seemingly minor offenses to report," refusing to investigate her claims of mistreatment, "subjecting her to trumped-up allegations leading to unjust discipline," and made her employment environment "hostile on account of race," all with an eye to set her up for termination.

---

[5] The end of two lines of text is slightly cut off on the Xerox copy of the complaint we have in the record. The bracketed material is supplied as the only possible punctuation and wording.

[6] The complaint includes allegations concerning the April 2007 printer incident, the November 2007 BART incident, the password incident, and the staff meeting. It also alleges information regarding two other incidents in July or August 2008, both of which were the subject of the ALJ's factual findings although not mentioned by the Commission.

6

Plaintiff also alleges "defendant County's reasons for its mistreatment of plaintiff were pretextual and were done as a part of defendant County's pattern and practice of discriminating against white females who were equally, or better, qualified than their African-American female counterparts."[7]

The complaint alleged termination based on racial discrimination (Gov. Code, §§ 129000 et seq.) (first cause of action); race-based sexual harassment (second cause of action); retaliation (third cause of action); failure to prevent or investigate harassment and discrimination (Gov. Code, § 12940, subd. (k)) (fourth cause of action); and wrongful termination in violation of public policy (fifth cause of action). The complaint [hereafter "FEHA complaint"] alleged it has been brought under FEHA and names the County as defendant, noting the County Counsel's Office is a County agency.

County answered and then moved for judgment on the pleadings. County argued the first and third causes of action were barred by collateral estoppel because their factual allegations concerning the justification of plaintiff's termination were identical to those raised and determined in the administrative proceeding. County further argued the second and fourth causes of action were barred by failure to exhaust administrative remedies because plaintiff's complaint to DFEH did not specifically allege harassment or County's failure to investigate or prevent harassment or discrimination.

After briefing and oral argument, the trial court granted County's motion for judgment on the pleadings without leave to amend and entered a judgment of dismissal.[8]

---

[7] Curiously, in several paragraphs of the complaint, plaintiff alleges her mistreatment was due to "personal animus," her retention of counsel, or her complaints about the allegedly illegal study group. These are not race-related motivations.

[8] The trial court granted judgment on the pleadings with respect to all five causes of action, but the fifth cause of action is not at issue on appeal. The trial court correctly granted judgment on the pleadings as to that cause of action because a claim for wrongful termination cannot be asserted against a public entity. (See *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899–900.)

7

## II. DISCUSSION

"Review of an order granting a motion for judgment on the pleadings is governed by the same standard applicable to reviewing an order sustaining a general demurrer:  We ordinarily examine only the face of the pleadings, together with matters subject to judicial notice, to determine whether such facts are sufficient to constitute a cause of action. [Citation.]" (*O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587, 594, fn. 1.)  In this case, we review the pleadings and the matters judicially noticed by the trial court to determine the legal issues of the applicability of collateral estoppel and failure to exhaust administrative remedies to the first through the fourth causes of action.[9]

Collateral estoppel, also known as issue preclusion, prevents "relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)  The requirements for collateral estoppel are:  the issue is identical to the issue decided in the former proceeding; the former proceeding actually and necessarily decided the issue; the decision in the former proceeding was on the merits and is final; and the person against whom the doctrine is asserted was party to, or in privity with a party to, the former proceeding.  (*Ibid.*)  Collateral estoppel is not limited to judicial proceedings, but can bar relitigation of issues decided in an administrative hearing by an agency acting in a judicial capacity.  (*Knickbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242.)

Plaintiff correctly notes that an administrative decision will not collaterally estop a subsequent FEHA action unless the decision completely eliminates a required element of the employee's FEHA action.  (See *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1486 (*George*).)  She contends the first and third causes of action (racial discrimination and retaliation) are not barred by collateral estoppel because the Commission's decision did not completely eliminate any required element of her racial discrimination claims.  She argues the Commission only determined she was

---

[9] At the parties' request, the trial court took judicial notice of the record of the administrative proceedings, the documents filed in the mandate proceeding, and the DFEH complaint.

terminated for violations of the Civil Service Rule, but did not determine the validity of her FEHA-cognizable claim of race-based disparate treatment, i.e., that plaintiff was treated more harshly than were other employees of a different race who committed similar misconduct. (See, e.g., *Jones v. Bessemer Carraway Medical Center* (11th Cir. 1998) 137 F.3d 1306, 1311, fn. 6, rehg. den. and opn. superseded on other grounds in *Jones v. Bessemer Carraway Medical Center* (11th Cir. 1998) 151 F.3d 1321; *Jones v. Gerwens* (11th Cir. 1989) 874 F.2d 1534, 1540.)

However, a close reading of plaintiff's complaint does not reveal any explicit allegations of disparate treatment or unpunished misconduct of other employees of the magnitude committed by plaintiff which led to her termination. Plaintiff alleges coworkers were discourteous to her—but plaintiff was terminated for being discourteous *to a supervisor* and for disrupting a staff meeting at which Mr. Winnie was present, and presumably presiding, and for being disrespectful to Mr. Winnie. This is much more serious behavior than the coworker behavior alleged by plaintiff.

We are thus left with the question whether plaintiff was terminated for violation of workplace rules. The administrative proceedings before the Commission show that she was, and collaterally estop plaintiff's first and third cause of action.

*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477 (*Castillo*), on which the trial court relied, is instructive. In that case, a municipal employee was terminated for tardiness and unauthorized absences. (*Castillo, supra,* at p. 479.) He unsuccessfully challenged his termination at an administrative hearing, at which he presented evidence showing his attendance was satisfactory. (*Id.* at pp. 479, 482.) He also presented some evidence of disparate treatment, but did not argue the discrimination was based on age, race, or national origin—factors which formed the basis of his subsequent FEHA action against the City of Los Angeles. (*Id.* at pp. 480, 482.) The trial court granted the City summary judgment on the ground the administrative proceedings collaterally estopped the FEHA action. (*Id.* at p. 481.)

9

The administrative hearing officer found Castillo's attendance was unsatisfactory and that his termination was appropriate. (*Castillo, supra,* 92 Cal.App.4th at p. 481.) The *Castillo* court concluded these findings collaterally estopped the issues raised in the FEHA action. "The issue, wrongfulness of the discharge, is identical in the administrative proceeding and this suit." (*Castillo, supra,* at p. 481.) The wrongfulness of Castillo's termination was actually litigated in the administrative proceedings. (*Id.* at p. 482.) And, while discrimination due to age, race or national origin was not raised at the administrative hearing, the issue of improper discrimination was necessarily decided: "The hearing examiner necessarily decided that Castillo's discharge was for proper reasons when she found the discharge 'appropriate.' Further, if the hearing examiner were to have found that the reasons for discharge were merely a pretext for discrimination, she would not have found the discharge was appropriate." (*Ibid.*)[10]

In the present case, while recommending suspension rather than termination, the ALJ found plaintiff's behavior violated workplace rules and warranted discipline—the ALJ did not find the sought after discipline was a pretext for discrimination. And, based on the facts before the ALJ, the Commission properly exercised its discretion to terminate plaintiff. The issues surrounding her workplace behavior and subsequent discipline are identical to those raised in the FEHA complaint and were actually and necessarily decided in the administrative proceedings. Since plaintiff was a party to these proceedings and they are now final, collateral estoppel applies to bar the first and third causes of action.[11]

---

[10] The recent decision of *Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 887–889, is in accord with *Castillo*.

[11] The *George* case did not apply collateral estoppel to preclude all the allegations of a lawsuit. (*George, supra,* 179 Cal.App.4th at pp. 1486–1488.) But the case is distinguishable because the plaintiff alleged a pattern of mistreatment and the administrative agency found that much of that mistreatment was unjustified—indeed, it set aside one suspension and found much of the bases for a second and third was unfounded—leaving undecided any question of discriminatory animus.

Plaintiff also contends the second and fourth causes of action (race-based sexual harassment and failure to investigate or prevent harassment and discrimination) are not barred by failure to exhaust administrative remedies because the acts alleged are encompassed by her DFEH complaint. We requote that complaint:

"Group of African-American women, plus one Hispanic, formed a study group (an illegal study group for the Civil exams, Legal Secretary[).] When I reported the matter, they retaliated & discriminated aga[inst] me until I was terminated . . . ."

The primary test for exhaustion in this context is whether the FEHA allegations are like or reasonably related to the employee's DFEH complaint. (See *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1614; *Oubichon v. North American Rockwell Corporation* (9th Cir. 1973) 482 F.2d 569, 571.) The DFEH complaint's allegations of retaliation and discrimination are distinct from the FEHA complaint's allegations of harassment and the failure to prevent harassment. Discrimination involves official action taken by an employer, while harassment focuses on the social environment and interpersonal relations in the workplace. (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706–707.) Plaintiff's DFEH complaint does not mention harassment or the failure to prevent harassment, and thus she has not exhausted her administrative remedies with regard to those claims. To the extent her FEHA complaint alleges in the fourth cause of action the failure to prevent discrimination, she did not provide sufficient facts in her DFEH complaint to show *the County* failed to take action. Moreover, her brief, conclusory statement of facts ambiguously refers to "they" as the actors who discriminated and retaliated—grammatically, "they" could refer to the women in the study group, not plaintiff's employer or supervisors.[12]

---

[12] Plaintiff's reliance on *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057 (*Baker*) is misplaced. In *Baker* the court found the FEHA complaint's allegations of subsequent harassment, differential treatment, retaliation for filing a grievance, and racial discrimination were encompassed by the DFEH complaint's original allegation of racial discrimination. (*Baker, supra,* at pp. 1060–1061, 1065.)

Plaintiff also relies on an alternative test for exhaustion: whether her causes of action in the FEHA complaint would have been reasonably expected to fall within the scope of a reasonable DFEH investigation of her DFEH complaint. (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 266–267.) But since discrimination is distinct from harassment, any such investigation would not have focused on the latter—especially since plaintiff's DFEH complaint was factually limited to the study group and encompassed no other workplace behavior.

### III. DISPOSITION

The judgment of dismissal is affirmed.


_____
Sepulveda, J.*


We concur:


_____
Dondero, Acting P.J.


_____
Banke, J.


* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.